**United States District Court**
For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| PERFECT 10, INC., | NO. C 04-0371 JW |
| Plaintiff, | **ORDER GRANTING DEFENDANTS' MOTION TO DISMISS** |
| v. | |
| VISA INTERNATIONAL SERVICE ASSOCIATION; FIRST DATA CORP.; CARDSERVICE INTERNATIONAL, INC.; MASTERCARD INTERNATIONAL INC.; HUMBOLDT BANK, | |
| Defendants. | |
| _____ / | |

I. INTRODUCTION

This is a dispute involving claims of copyright and trademark infringement, violation of publicity rights, unfair competition, libel, and intentional interference with prospective business advantage. Plaintiff Perfect 10, Inc. ("Plaintiff") has brought suit against Visa, Mastercard, First Data Corp., Cardservice International, and Humboldt Bank (collectively "Defendants"). Defendants are moving to dismiss the complaint pursuant to Rule 12(b)(6) for failure to state a claim for which relief can be granted. The Court conducted a hearing on July 9, 2004. For the following reasons, the Court GRANTS Defendants' motion to dismiss.

## II. BACKGROUND

For the purposes of this motion, all facts alleged in the complaint are taken as true. Plaintiff provides adult entertainment services, including a magazine and website featuring nude models. Plaintiff owns the copyrights in most of the images displayed in its magazines and on its website. Many of the images display the registered mark "Perfect 10." Plaintiff also owns the right of publicity for many of the models that appear in its images.

Visa and Mastercard are entities owned by associations of banks, including Defendant Humboldt Bank, which process hundreds of millions of credit transactions over their networks each day. Two types of banks are associated with Visa and Mastercard--acquiring banks and issuing banks. Acquiring banks contract with merchants to allow those merchants to accept Visa and Mastercard cards as payment. Issuing banks provide credit cards to consumers. Another type of organization, an Independent Service Organization ("ISO"), can act in lieu of an acquiring bank as an agent for member banks. Defendants First Data Corp. ("FDC") and Cardservice International ("CSI") are ISOs.

When a merchant processes a Visa or Mastercard account number from a customer, the merchant electronically relays the transaction to its acquiring bank or ISO. The bank or ISO then presents the transaction to Visa or Mastercard. The issuing bank for the card notifies Visa or Mastercard whether it authorizes the transaction, and Visa or Mastercard relays that information back to the acquiring bank or ISO, which then provides that information to the merchant. The entire process takes a matter of seconds. Visa and Mastercard receive a fee for each transaction processed using their cards.

Visa has certain internal regulations regarding the conduct of its member banks. It prohibits its banks from providing services to entities involved in illegal activity, and requires its acquiring banks or ISOs to investigate and terminate merchant accounts if the merchant is engaging in illegal activity. Visa also requires member banks to terminate the accounts of merchants who have excessively high "chargeback" ratios. A chargeback occurs when a customer requests a reversal of an

improper charge. A "black list" of terminated merchants is published, and access to this list is provided to all members of Visa and all third-party processors. In 2001, Plaintiff was added to this list after hackers allegedly caused it to reflect high chargeback rates. Although Visa and its member banks terminated Plaintiff's merchant account at that time, Plaintiff is still able to accept Visa cards as payment through the use of an intermediate service.

At the center of this case is a group of websites that publish material that allegedly infringes Plaintiff's copyrights and trademarks. Typically these are websites that claim to display pornography featuring prominent actresses. Plaintiff refers to these websites as "Stolen Content Websites." Defendants allegedly provide financial services to these Stolen Content Websites, allowing them to process Visa and Mastercard cards as a method of payment. Plaintiff sent letters to Defendants informing them of the websites' alleged infringing behavior and demanding that Defendants terminate the provision of financial services to those websites. When Defendants did not comply, Plaintiff brought this suit. The Stolen Content Websites are not a party to this lawsuit.

### III. STANDARDS

Pursuant to Rule 12(b)(6), a complaint may be dismissed for failure to state a claim upon which relief may be granted. "A claim may be dismissed as a matter of law for one of two reasons: (1) lack of a cognizable legal theory or (2) insufficient facts under a cognizable legal claim." Robertson v. Dean Witter Reynolds Co., 749 F.2d 530, 534 (9th Cir. 1984). "A complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45-46 (1957). The Court "must presume all factual allegations of the complaint to be true and draw all reasonable inferences in favor of the nonmoving party." Usher v. City of Los Angeles, 828 F.2d 556, 561 (9th Cir. 1987). In ruling on such a motion, "a court *may not* look beyond the complaint." Schneider v. California Dept. of Corrections, 151 F.3d 1194, 1197 (9th Cir. 1998) (emphasis in original).

///

IV. DISCUSSION

**A. Copyright Infringement**

Plaintiff does not provide any facts supporting an allegation of direct copyright infringement against Defendants. Instead, Plaintiff alleges that the Stolen Content Websites engaged in direct infringement and Defendants are liable for contributory and vicarious copyright infringement. The gravamen of Plaintiff's complaint is that, despite receiving notice of the alleged infringing activity committed by third parties, Defendants have materially contributed to and controlled the alleged infringing activity by providing financial services to the alleged infringers.

**1. Contributory Copyright Infringement**

In order to prevail on a claim for contributory infringement, Plaintiff must show that (1) Defendants had knowledge of the infringing activity; and (2) induced, caused, or materially contributed to that infringing activity. Ellison v. Robertson, 357 F.3d 1072, 1076 (9th Cir. 2004). Plaintiff claims that it contacted Defendants numerous times in order to notify them of the websites' alleged infringing conduct, and as a result, Defendants had knowledge of the infringing activity. Defendants do not argue the issue of knowledge. However, Defendants vigorously deny that they materially contributed to that alleged infringement.

To have engaged in contributory copyright infringement, it is not sufficient for the Defendants to merely have contributed to the general business of the infringer. To have materially contributed to copyright infringement, "the ... assistance must bear some direct relationship to the infringing acts." 3-12 Nimmer on Copyright § 12.04[A][2][a] (2004); Fonovisa, Inc. v. Cherry Auction, Inc., 76 F.3d 259, 264 (9th Cir. 1996) ("One who directly contributes to another's infringement should be held accountable."); MGM Studios, Inc. v. Grokster, Ltd., 259 F. Supp. 2d 1029, 1042 (C.D. Cal. 2003) (The Defendants' assistance "must bear a direct relationship to the infringing acts."). In addition, the contributing conduct must be substantial. Religious Tech. Ctr. v. Netcom On-line Comm. Servs., 907 F. Supp. 1361, 1375 (N.D. Cal. 1995).

///

4

Examples of material contribution from recent Internet case law include providing an online index of copyrighted songs to facilitate their transfer between software users, A&M Records v. Napster, 239 F.3d 1004, 1021 (9th Cir. 2001), and providing a bulletin board system allowing Internet users to upload and download copyrighted video games, Sega Enters. v. MAPHIA, 948 F. Supp. 923, 933 (N.D. Cal. 1996). In non-Internet cases, contributory infringement has traditionally been found where defendant swap-meet owners provided infringing vendors at the swap-meet with "space, utilities, parking, advertising, plumbing, and customers." UMG Recordings, Inc. v. Sinnott, 300 F. Supp. 2d 993, 1001 (E.D. Cal. 2004) (citing Fonovisa, Inc. v. Cherry Auction, Inc., 76 F.3d 259, 264 (9th Cir. 1996)). All of these acts were directly tied to not only the business operations of the infringers, but specifically to their infringing conduct.

Plaintiff relies heavily on Perfect 10, Inc. v. Cybernet Ventures, Inc., 213 F. Supp. 2d 1146 (C.D. Cal. 2002). In that case, Plaintiff brought suit against Cybernet, a company that provided age verification services for the same allegedly infringing websites at issue in the present case. The court in Cybernet granted Plaintiff's motion for a preliminary injunction based on the fact that Cybernet materially contributed to the websites' alleged infringing actions by advertising the websites and paying a commission to a website whenever someone registered for Cybernet's services through that particular website. Id. at 1170. The court compared that situation to the swap-meet situation in Fonovisa and concluded that Cybernet's provision of support services was comparable to the comprehensive services provided in Fonovisa.

The situation in the present case is simply not on par with that in Cybernet. Unlike Cybernet, Defendants provide content-neutral services. Defendants do not promote the websites that use their services. Nor do Defendants have content-specific regulations with which merchants must comply before using Defendants services, as Cybernet did. Defendants do not hold out certain merchants as being providers of a particular quality of product. Defendants are concerned solely with financial aspects of the websites, not their content.

///

Plaintiff alleges that because Defendants provide essential financial services to the alleged infringers, they are materially contributing. There are two flaws with this argument. The first flaw is the assumption that the services Defendants provide are essential to the functioning of the allegedly infringing websites. Plaintiff asserts, "acceptance of MasterCard and Visa is necessary to an Internet merchant's commercial viability." (P's Opp. to Mot. to Dismiss, p. 1.) This statement is belied by facts from the Plaintiff's own complaint. Plaintiff itself was blacklisted by Visa and had its merchant account revoked, yet it still continues to operate its website and accept Visa and Mastercard as payment through an intermediate payment service. The allegedly infringing websites could employ intermediate payment services if Defendants terminated their merchant accounts. The websites could also use alternate forms of payment such as personal checks, money orders, debit cards, or other credit card providers. There is no reason to believe that the allegedly infringing websites could not continue to infringe and operate effectively if Visa and Mastercard were to terminate their financial services.

The second flaw with Plaintiff's assertion is the fact that while Defendants may provide services that materially contribute to the functioning of the website businesses, there is no factual basis for the allegation that they materially contribute to the alleged *infringing activities* of the websites. The alleged infringing activities are the copying and distribution of Plaintiff's images. The only service Defendants provide to the websites is the ability to process credit cards. The ability to process credit cards does not directly assist the allegedly infringing websites in copying Plaintiff's works. Defendants do not provide the means for distributing those works to others, nor do they provide bandwidth or storage space with which to transfer or store the works. Defendants' conduct does not begin to approach the level of involvement that existed in the cases enumerated above, where material contribution was found. In each of those cases, the defendants' conduct specifically assisted the infringing activity itself. Here, the websites would be every bit as capable of copying and distributing Plaintiff's copyrighted works regardless of whether they employed Defendants' services. As a result, Plaintiff has not adequately pled a claim for contributory copyright infringement.

Defendants' motion to dismiss this claim is granted with leave to amend. In its amended complaint, Plaintiff must establish a relationship between the financial services provided by Defendants and the alleged infringing activity as opposed to the mere operation of the website businesses.

**2. Vicarious Copyright Infringement**

In order to establish a claim for vicarious copyright infringement, Plaintiff must allege that Defendants have (1) the right and ability to control the infringing activity and (2) a direct financial benefit from the infringing activity. Ellison v. Robertson, 357 F.3d 1072, 1078 (9th Cir. 2004).

**a. Right and Ability to Control**

Plaintiff claims that Defendants have the right and ability to control the alleged infringing activity based on two grounds--first, because the provision of financial services is essential to the survival of the allegedly infringing websites, Defendants can dictate content by threatening to revoke their services if the websites do not comply with their standards, and second, Defendants have in place internal regulations governing the provision of service to high-risk merchants, including adult entertainment websites. The Court finds that neither ground constitutes the right and ability to control the alleged infringing activity.

First, the only enforcement mechanism that is within Defendants' power is the threat of rescinding their financial services. However, as the Court established in the previous section on contributory infringement, the allegedly infringing websites will be able to continue their alleged infringing conduct regardless of whether Defendants blacklist them. Therefore, Defendants' ability to rescind their services does not indicate control over the websites' alleged infringing actions.

Second, the existence of Defendants' internal regulations has no bearing on the ability or right of Defendants to control the conduct of a third party. Even if, as Plaintiff contends, Defendants monitor the allegedly infringing websites on a regular basis, Defendants still have no basis for dictating content to those websites. Third party websites are not bound by Defendants' internal regulations. Defendants have no contractual right to dictate the websites' content Nor do Defendants

have the authority to shut down the websites' servers, delete any infringing material they find, or prevent the transmission of such material.

The present situation is quite different than that in cases such as Napster, where the party found vicariously liable actually supplied the product that was being used to enable the infringing distribution of copyrighted works. Napster, 114 F. Supp. 2d at 921-22. In that case, Napster directly controlled whether users of the software could see and therefore download an infringing file by maintaining an index of available files. Napster had the ability to prevent the distribution of copyrighted files by removing them from the index. Id. at 906, 920-21. Here, Defendants cannot remove infringing works from the websites. They simply do not have the right or ability to do so.

The case at bar is also different than the various swap-meet cases like Fonovisa, where the swap-meet owners had the contractual right to eject any vendor from the premises. Fonovisa, 76 F.3d at 263. Unlike the swap-meet owners in Fonovisa, here Defendants cannot "eject" the websites from the Internet. The only power Defendants possess is that which allows the websites to process a certain type of payment through a certain bank. Plaintiff has not pled any facts that indicate that the right or ability to control the alleged *infringing conduct* of the websites is present.

### b. Direct Financial Benefit

The complaint includes facts that might indicate a financial benefit to Defendants as a result of the draw from the alleged infringing images. However, because Defendants did not have the right or ability to exercise control over the alleged infringing activity, the existence of a financial benefit is not sufficient to establish vicarious liability. Defendants' motion to dismiss this claim is granted with leave to amend.

## B. Trademark Infringement

Plaintiff's second and third claims are for trademark infringement. There are no facts alleged that indicate direct infringement by Defendants. Instead, the complaint once again refers to the conduct of the Stolen Content Websites, some of whom have allegedly left "Perfect 10" printed on the materials they allegedly misappropriated from Plaintiff's website or magazines.

**1. Contributory Trademark Infringement**

Liability for secondary trademark infringement is even narrower than that under copyright law. Sony Corp. of America v. Universal City Studios, Inc., 464 U.S. 417, 439 (1984). In order to be liable for contributory trademark infringement, Defendants must have either "induce[d] a third party to infringe the plaintiff's mark or supplie[d] a product to a third party with actual or constructive knowledge that the product is being used to infringe the [mark]." Lockheed Martin Corp. v. Network Solutions, Inc., 194 F.3d 980, 983 (9th Cir. 1999).

Plaintiff has pled no facts indicating that Defendants induced the allegedly infringing websites to use Plaintiff's marks. In fact, the language of the complaint indicates that Plaintiff believed the standard for contributory trademark infringement to be the same as that for contributory copyright infringement. (Compl. ¶ 98 ("Defendants are knowingly inducing, causing, and materially contributing to the conduct of the Stolen Content Websites").) As the rule stated above indicates, however, this is not the case. Although the complaint contains the allegation that Defendants "are knowingly inducing" the alleged infringing conduct, Id., there are no facts presented in the complaint that support such an allegation.

Likewise, Plaintiff has not pled facts indicating that Defendants supplied a product to the websites, knowing that the product would be used to infringe Plaintiff's mark. The only service Defendants supply is the ability to accept certain credit cards as payment, and this service has no apparent direct link to the alleged infringing activities. As a result, Plaintiff has not adequately pled a claim for contributory trademark infringement. Defendant's motion to dismiss this claim is granted with leave to amend.

**2. Vicarious Trademark Infringement**

For vicarious trademark infringement to exist, Defendants and the infringers must "have an apparent or actual partnership, have authority to bind one another in transactions with third parties or exercise joint ownership or control over the infringing product." Hard Rock Cafe Licensing Corp. v. Concession Services, Inc., 955 F.2d 1143, 1150 (9th Cir. 1992).

Plaintiff has pled no facts that indicate such an intimate relationship between Defendants and the allegedly infringing websites. Plaintiffs have not alleged that Defendants have been involved in any sort of a partnership with the websites. Once again, Plaintiff seems to be pleading to the wrong legal standard, including terms like "control the infringing content" and "direct financial benefit," (Compl. ¶ 98), which are important when considering vicarious copyright infringement, but have no bearing on the existence of vicarious trademark infringement. Defendants' motion to dismiss this claim is granted with leave to amend.

**C. State Trademark Claims**

Plaintiff's fourth claim is for the wrongful use of a registered mark under California Business & Professions Code § 14335. This section applies to "[a]ny person who uses or unlawfully infringes upon a mark registered under this chapter or under Title 15 of the United States Code." Cal. Bus. & Prof. Code § 14335(a). Nowhere in the complaint does it allege that Defendants have ever used Plaintiff's marks. The Court has also found the pleading of secondary trademark infringement insufficient, therefore this section does not apply. Defendants' motion to dismiss this claim is granted with leave to amend.

**D. Right of Publicity**

Plaintiff claims that Defendants have aided and abetted the violation of its right of publicity in various models. Under California law, "[t]o establish aiding and abetting liability ... plaintiff must show that VISA affirmatively participated in the [illegal] activities with the intent to facilitate them." Emery v. Visa Int'l Service Assoc., 95 Cal. App. 4th 952, 962 (2002). The court went on to conclude that "knowledge of, or failure to prevent, a crime is not sufficient to establish aiding and abetting liability." Id. The same reasoning applies to this case. According to the complaint, Defendants did not participate in the alleged illegal activities, they merely provided financial services to merchants. The fact that Plaintiff may have notified Defendants of illegal conduct is "not sufficient to establish aiding and abetting liability." Id. Defendants' motion to dismiss this claim is granted with leave to amend.

**E. Unfair Competition**

Plaintiff asserts a claim for unfair competition under 15 U.S.C. § 1125(a), California Business & Professions Code §§ 17200 *et seq.*, and the common law. These claims are based on what Defendants colorfully dub as "a virtual bouillabaisse of alleged misconduct by third parties." (Reply Memo. in Support of Def.'s Mot. to Dismiss, p. 21.) The misconduct, all perpetrated by the allegedly infringing websites or unidentified "webmasters," includes selling misappropriated content, deceiving customers as to the origin of their content, misrepresenting the amount and scope of material on the websites, falsely claiming their websites are free, selling access to unauthorized passwords, and running websites that promote rape and incest, illegal downloading, and stealing cable television services. (Compl. ¶¶ 127-28.) The only allegation against the Defendants in the midst of this claim is that they provided critical support to the perpetrators of this misconduct. Id. Although not specified, the alleged "critical support" is presumably the provision of credit card processing services.

Plaintiff has not alleged any direct wrongdoing on the part of Defendants. Any liability is premised entirely on vicarious or aiding and abetting liability. Vicarious liability, however, is precluded under the California unfair competition laws. When another party tried to sue Visa for vicarious liability under this statute, the California Court of Appeal for the Third District stated, "[t]he concept of vicarious liability has no application to actions brought under the unfair business practices act. [citation omitted] A defendant's liability must be based on his personal participation." Emery v. Visa Int'l Serv. Ass'n, 95 Cal. App. 4th 952, 960 (2002). Plaintiff has failed to allege any personal participation on the part of Defendants, therefore Plaintiff fails to state a claim for vicarious liability.

Plaintiff argues in its reply brief that while vicarious liability may be precluded, Defendants may still be held liable for aiding and abetting liability. Although such liability may be possible, Plaintiff has not alleged sufficient facts to support such a claim for the same reasons set forth in the preceding section. Plaintiff has simply failed to allege facts indicating that Defendants assisted

specifically in the unlawful conduct of the third parties. This reasoning similarly precludes the unfair competition claims under the Lanham Act and common law. Defendants' motion to dismiss this claim is granted with leave to amend.

**F. False Advertising**

For the same reasons set forth in the preceding sections concerning aiding and abetting liability, Plaintiff has failed to adequately state facts supporting a claim against Defendants for false advertising under either California law or the common law. Defendants' motion to dismiss this claim is granted with leave to amend.

**G. Libel**

Plaintiff's eighth claim is for libel. "Libel is a false and unprivileged publication ... which exposes any person to hatred, contempt, ridicule, ... or which has a tendency to injure him in his occupation." Cal. Civ. Code § 45. Plaintiff alleges that by placing its name on a list of merchants whose accounts were terminated, Defendants have issued a declaration to the "entire payment card industry" that Plaintiff engaged in wrongful conduct and would present a high risk to any financial institution that provides it with credit services. (Compl. ¶ 144.) Plaintiff's claim for libel is insufficient for two reasons--first, Defendants have not published anything that is untrue, and second, it is time-barred.

The libel claim fails because it requires a false statement, which Plaintiff does not allege. Plaintiff alleges that the black list is a list of merchants who have had their accounts terminated by Visa. (Compl. ¶ 12.) Plaintiff also admits in its complaint that its merchant account was terminated by Visa. (Compl. ¶ 143.) Therefore the act of telling other banks that Plaintiff has had its account terminated is not a false statement. The truth is an absolute defense to a claim of libel. <u>Newberry v. Pacific Racing Assoc.</u>, 854 F.2d 1142, 1151 (9th Cir. 1988).

In addition, the libel claim is time-barred. The statute of limitations for a claim of libel is one year. Cal. Civ. Proc. Code § 340(c). Plaintiff alleges in its complaint that it was placed on the "Black List" in 2001. The complaint was not filed until 2004, well outside of the time limit. Plaintiff

contends in its reply brief that it did not discover the publication until 2003, however this allegation is not in the complaint. The court may not look outside of the complaint when deciding a 12(b)(6) motion. Schneider v. California Dept. of Corrections, 151 F.3d 1194, 1197 (9th Cir. 1998). Aside from being outside the scope of the complaint, this assertion defies common logic. Plaintiff's placement on the Black List resulted in the revocation of its merchant account and consequent inability to process Visa cards without an intermediary. It would be nigh impossible for Plaintiff not to have noticed such a change in its situation.

Plaintiff's alternate contention is that each time a member bank accessed the Black List, it constituted a re-publication of the list, and therefore the statute of limitations began anew from the most recent time the list was accessed. The Court need not address the issue of whether each accessing of the list constituted a publication, however, because Plaintiff has not alleged any facts in its complaint that indicate an accessing of the list within the year before the complaint was filed. Therefore, on the face of the complaint, the claim for libel fails because no false statement was made, and it is time-barred. Defendants' motion to dismiss this claim is granted with prejudice.

**H. Intentional Interference with Economic Relations**

Plaintiff alleges that Defendants have intentionally interfered with its economic relations both by placing it on the black list and by participating in the business of the Stolen Content Websites. This cause of action is subject to a two-year statute of limitations. Cal. Code Civ. Proc. § 339; Tu-Vu Drive-In Corp. v. Davies, 66 Cal. 2d 435, 437 (1967). Defendants placed Plaintiff on the black list in 2001. Because the complaint was not filed within two years, this claim is also time-barred.

In addition, in order to adequately plead a claim for intentional interference with economic relations, Plaintiff must allege that Defendants have committed some independently wrongful act. Defendant's act must have been "wrongful by some legal measure other than the fact of interference itself." Della Penna v. Toyota Motor Sales, U.S.A., Inc., 11 Cal. 4th 376, 393 (1995). Plaintiff relies on its claim of libel to constitute this wrongful act. However, this Court has now held the libel claim insufficient as a matter of law. Because Plaintiff has alleged no other wrongful acts, the claim for

intentional interference with economic relations fails. Defendants' motion to dismiss this claim is granted with prejudice.

## V. CONCLUSION

For the reasons stated above, Defendants' motion to dismiss is GRANTED. The claims for libel and intentional interference with economic relations are dismissed with prejudice. The claims for contributory and vicarious copyright infringement, contributory and vicarious trademark infringement, state trademark infringement, right of publicity, unfair competition, and false advertising are dismissed with leave to amend. Plaintiff may file and serve an amended complaint no later than September 6, 2004. All scheduled trial and pre-trial dates are vacated.

Dated: August 5, 2004

/s/ James Ware
JAMES WARE
United States District Judge

04cv0371gmd

**THIS IS TO CERTIFY THAT COPIES OF THIS ORDER HAVE BEEN MAILED TO:**

Andrew P. Bridges abridges@winston.com
Jeffrey Neil Mausner jeffmausner@bmrlaw.com
Mark T. Jansen mtj@townsend.com
Michael H. Page mhp@kvn.com
Robert James Slaughter rjs@kvn.com
Stephen Davids Rothschild Rothschild@khpblaw.com

**Dated: August 6, 2004**                       **Richard W. Wieking, Clerk**


**By:____/JW chambers/____**

**Ronald L. Davis**

**Courtroom Deputy**