| | |
|---|---|
| 1<br>2<br>3<br>4<br>5<br>6<br>7 | TOWNSEND AND TOWNSEND AND CREW LLP<br>DANIEL J. FURNISS (State Bar No. 73531)<br>MARK T. JANSEN (State Bar No. 114896)<br>JOHN C. BAUM (State Bar No. 167570)<br>Two Embarcadero Center, Eighth Floor<br>San Francisco, California 94111<br>Telephone: (415) 576-0200<br>Facsimile: (415) 576-0300<br><br>Attorneys for Defendant<br>VISA INTERNATIONAL SERVICE ASSOCIATION |

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| PERFECT 10, INC., a California corporation,<br><br>            Plaintiff,<br><br>            v.<br><br>VISA INTERNATIONAL SERVICE ASSOCIATION; FIRST DATA CORP, a corporation; CARDSERVICE INTERNATIONAL, INC., a corporation; MASTERCARD INTERNATIONAL INCORPORATED, a corporation; HUMBOLDT BANK, a national banking association; and DOES 1 through 100, inclusive,<br><br>            Defendants. | Case No.   CV 04 00371 JW (PVT)<br><br>**DEFENDANT VISA INTERNATIONAL SERVICE ASSOCIATION'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT**<br><br>Date: November 15, 2004<br>Time: 9:30 a.m.<br><br>The Hon. James Ware<br>Courtroom 8, 4th Floor |

| | TABLE OF CONTENTS | Page |
|---|---|---|

I. INTRODUCTION ................................................................................................................1

II. NO NEW MATERIAL FACTS ARE ALLEGED BY PLAINTIFF .............................................2

III. DISCUSSION .....................................................................................................................5

    A. Plaintiff Has Not Alleged New Facts Supporting Either Contributory Or Vicarious Copyright Infringement ...................................................................5

        1. No New Facts Supporting Contributory Copyright Infringement Are Alleged ...............................................................................5

        2. No Facts Establishing Vicarious Copyright Infringement Liability Have Been Alleged ..............................................................................7

            a) Plaintiff Still Has Not Alleged The Requisite Right And Ability To Control ............................................................................7

            b) Direct Financial Benefit.......................................................................12

    B. Plaintiff Has Not Alleged New Facts Curing The Defects In Its Trademark Infringement Claims .......................................................................12

        1. No Contributory Infringement Is Alleged ................................................12

        2. No Vicarious Trademark Infringement Is Alleged...................................13

    C. No Viable California State Trademark Claim Is Alleged......................................13

    D. The California Right of Publicity, State Unfair Competition And False Advertising Claims Also Must Be Dismissed .................................................13

IV. CONCLUSION ................................................................................................................14

| | **TABLE OF AUTHORITIES** | Page |

**Cases**

*A&M Records v. Napster, Inc.*
   239 F.3d 1004 (9th Cir. 2001) .................................................................................. 7, 10

*A&M Records v. Napster, Inc.*
   114 F.Supp.2d 896 (N.D. Cal. 2000) .............................................................................. 10

*Adobe Systems Inc. v. Canus Productions, Inc.*
   173 F.Supp.2d 1044 (C.D.Cal. 2001) ........................................................................... 8, 9

*Banff v. Limited, Inc.*
   869 F. Supp. 1103 (S.D.N.Y. 1994) .................................................................................. 9

*Demetriades v. Kaufman*
   690 F.Supp. 289 (S.D.N.Y. 1988) ..................................................................................... 9

*Ellison v. Robertson*
   357 F.3d 1072 (9th Cir. 2004) ...................................................................................... 5, 7

*Emery v. Visa Int'l Serv. Ass'n*
   95 Cal.App.4th 952 (2002) ..................................................................................... 3, 9, 13

*Fonovisa, Inc. v. Cherry Auction, Inc.*
   76 F.3d 259 (9th Cir. 1996) .................................................................................. 5, 11, 12

*Frank Music Corp. v. Metro-Goldwyn-Mayer, Inc.*
   886 F.2d 1545 (9th Cir. 1989), *cert denied*, 494 U.S. 1017 (1990) ................................... 9

*Hard Rock Café Licensing Corp. v. Concession Services, Inc.*
   955 F.2d 1143 (7th Cir. 1992) .................................................................................. 12, 13

*Inwood Laboratories, Inc. v. Ives Labs. Inc.*
   456 U.S. 844 (1982) ........................................................................................................ 12

*Lockheed Martin Corp. v. Network Solutions, Inc.*
   194 F.3d 980 (9th Cir. 1999) ....................................................................................... 9, 12

*Metro-Goldwyn-Mayer Studios, Inc. v. Grokster Ltd.*
   259 F.Supp.2d 1029 (C.D. Cal. 2003), *aff'd* 380 F.3d 1154 (9th Cir. Aug. 19, 2004) ........ 5

*Metro-Goldwyn-Mayer Studios, Inc. v. Grokster, Ltd.*
   380 F.3d 1154 (9th Cir. August 19, 2004) ................................................................ passim

*Mid-Cal Nat'l Bank v. Federal Reserve Bank*
   590 F.2d 761 (9th Cir. 1979) ............................................................................................. 9

*Religious Tech. Ctr. v. Netcom On-line Comm. Servs.*
   907 F.Supp. 1361 (N.D. Cal. 1995) .............................................................................. 5, 6

*Sony Corp. v. Universal City Studios, Inc.*
   464 U.S. 417 (1984) .................................................................................................... 6, 12

# TABLE OF AUTHORITIES (con't)

**Statutes**   Page

California Business & Professions Code § 14335 .................................................................... 13

California Business & Professions Code §§ 17200 et seq. .................................................... 13

**Other Authorities**

3-12 *Nimmer on Copyright* § 12[A][2][a] (2004) ...................................................................... 5

## I. INTRODUCTION

Plaintiff Perfect 10, Inc. ("Perfect 10"), has filed a First Amended Complaint. In doing so, Perfect 10 has failed to cure the defects identified by the Court when it granted Defendants' motion to dismiss the original complaint. Plaintiff has not added any new material, factual allegations establishing that Defendant Visa International Service Association ("Visa") or any other defendant is directly infringing its copyrights or trademarks, or is either materially contributing to or supervising the alleged infringements, by independent website merchants with whom Visa has no relationship except to indirectly provide credit card purchase transaction processing services. Because Plaintiff has failed for the second time to provide needed factual allegations, all remaining claims in its First Amended Complaint ("Amended Complaint") should be dismissed with prejudice.

This Court already has examined -- and rejected as insufficient -- Perfect 10's extremely thorough and detailed original Complaint. August 6, 2004 Order Granting Defendants' Motion to Dismiss (hereafter, the "8/6/04 Order" or "Order"). Just two weeks after the Court issued its Order, the Ninth Circuit Court of Appeals issued its decision in *Metro-Goldwyn-Mayer Studios, Inc. v. Grokster, Ltd.*, 380 F.3d 1154 (9th Cir. August 19, 2004) ("*Grokster*"). In *Grokster*, the Ninth Circuit put to rest any possible doubts about the correctness of this Court's Order dismissing Plaintiff's original complaint.

This Court dismissed Perfect 10's copyright and trademark infringement claims, and also related state law claims for unfair competition and theft of publicity, with leave to amend.[1] The Court recognized that the Defendants' provision of content-neutral financial services could not create secondary liability for copyright or trademark infringement -- or any other misconduct -- by unrelated merchants, because Defendants' services are not directly used in the infringing activity, and because Defendants are not in a partnership or other close relationship giving them the actual ability and right to supervise and control the alleged infringing activities by so-called "stolen content websites." Absent such control or direct participation in the infringing conduct, Defendants' knowledge that a

---

[1] The Court dismissed Plaintiff's claims for libel and tortious interference with prejudice.

1  small handful of their service customers are infringing is simply irrelevant, notwithstanding the
2  allegation that Defendants' services -- like those supplied by the electric, water or telephone company
3  -- are necessary to or "materially contribute to the functioning of the website businesses." 8/6/04
4  Order at p. 6:14-17.  Although the Court granted Plaintiff leave to amend certain claims, it expressed
5  considerable doubt whether Plaintiff could possibly allege facts supporting any theory of liability.
6  The Court warned that, to avoid dismissal with prejudice, "Plaintiff must establish a relationship
7  between the financial services provided by Defendants and the alleged infringing activities [by
8  unrelated websites] as opposed to the mere operation of the website businesses."  Order at p. 7:1-3.

9        Plaintiff has changed its Complaint somewhat, but Visa is unable to identify any material, non-
10 conclusory facts which could cure the fatal defects previously identified by the Court.  The only
11 apparent substantive addition is the attachment of an illegible standard credit agreement that
12 Defendants Humboldt Bank ("Humboldt") and Cardservice International ("CSI") -- but not Visa --
13 allegedly enter with all of the merchants those defendants provide credit to, and also a few added
14 paragraphs summarizing some of the alleged terms of that standard merchant agreement.  Amended
15 Complaint, ¶¶ 16-24 and Ex. 1.  Although Plaintiff has alleged more details about the bank-merchant
16 credit agreements, those details do not constitute new material facts.  These agreements were alleged
17 in the original complaint and the Court already has ruled that such agreements, and the concomitant
18 right to withdraw credit and processing services for discovered violations of law of other breaches of
19 the contract terms, do not establish the necessary partnership with, or "control" and "supervision"
20 over, independent merchants sufficient to impose secondary liability against any Defendant, under any
21 legal theory.

22       Given Plaintiff's failure to add any new, legally significant factual allegations, Plaintiff's First
23 Amended Complaint should be dismissed with prejudice.

24 **II.     NO NEW MATERIAL FACTS ARE ALLEGED BY PLAINTIFF**

25       The facts alleged in the Amended Complaint are not materially different than those alleged in
26 the original Complaint, and summarized by the Court in its 8/6/04 Order.  Order at pp. 2-3.  Plaintiff is
27 in the adult entertainment business.  It owns and operates the website located at perfect10.com and
28 publishes Perfect 10 Magazine.  Amended Complaint, ¶ 41.  Perfect 10 claims that unidentified, third-

1 party websites, so-called "stolen content websites," are infringing its copyrights, trademarks, rights of publicity and are engaging in unfair competition. *Id.*, ¶ 6. Perfect 10 alleges that Defendants provide payment card processing services to those websites. *Id.*, ¶¶ 30-31. Notably, however, none of the "stolen content websites" are affiliated with or controlled by any Defendant.

Defendants Visa and MasterCard are entities owned by associations of banks, including Defendant Humboldt Bank. Visa, MasterCard and First Data Corp process hundreds of millions of dollars in payment card transactions every day. *Id.*, ¶ 8. Two types of banks are associated with Visa and MasterCard. Acquiring banks contract with merchants to allow those merchants to accept Visa and MasterCard cards in payment. Issuing banks provide payment cards to customers. *Id.*, ¶¶ 8-10. Third-party processors, called Independent Service Organizations ("ISO's") can act in lieu of an acquiring bank as an agent for member banks. Defendants First Data Corp. and Cardservice International are ISO's. *Id.*, ¶ 9.

Every time a consumer presents a Visa or MasterCard to a merchant to pay for goods or services, a complex series of communications is relayed among the merchant, the ISO (or acquiring bank), Visa or MasterCard, and the issuing bank. First, the merchant relays the transaction to its acquiring bank or ISO. The bank or ISO then presents the transaction to Visa or MasterCard, who relay the request to the consumer's issuing bank. The issuing bank responds with its authorization to process the charge against the consumer's credit account, Visa or MasterCard relays that authorization to the acquiring bank or ISO, which then notifies the merchant that the charge is authorized. Each of these millions of daily transactions is completed in a few seconds. Visa and MasterCard are alleged to receive a fee for each transaction processed. *Id.*, ¶¶ 9-13.[2]

Perfect 10 alleges that Visa and MasterCard maintain internal regulations concerning the conduct of its member banks. Amended Complaint, ¶ 14. These internal rules allegedly prohibit member banks and ISO's from providing services to merchants engaged in illegal activity, and also

---

[2] The California state court of appeals in *Emery v. Visa Int'l Serv. Ass'n*, 95 Cal.App.4th 952, 956 (2002), described in detail the Visa system and the procedure used for submittal, approval and clearing of the tens of millions of Visa credit card payments processed each day.

allegedly require member banks and ISO's to investigate merchants suspected of engaging in illegal activity and to terminate merchants engaged in illegal activity. *Id.* Perfect 10 also alleges that Defendants Humboldt, First Data and Cardservice have entered into Merchant Agreements with the third party websites. *Id.*, ¶ 16. Perfect 10 attached a copy of what it contends is a standard Merchant Agreement to its Amended Complaint. *Id.*, Ex. 1. Pursuant to that Merchant Agreement, the merchant warrants that it is in compliance with all applicable laws and that it has the right to sell the products it offers. *Id.*, ¶ 19. Contracting defendants can suspend or terminate services to merchants who breach the Merchant Agreement. *Id.*, ¶ 21.

Elsewhere in the Amended Complaint, Perfect 10 alleges that Defendants "materially contribute to transactions involving hundreds if not thousands of websites . . . by processing individual Visa and MasterCard charges." *Id.*, ¶ 59. Perfect 10 alleges that Defendants have the ability to control the infringing conduct "by refusing to process credit cards for such websites and/or simply enforcing their own rules and regulations." *Id.*, ¶ 93. But, these are exactly the sort of allegations previously found insufficient by this Court as a matter of law.

Although Plaintiff has attempted to allege more <u>details</u> about the nature of certain Defendants' credit agreements with merchants, and about Visa's and MasterCard's internal system regulations, Plaintiff has not added any material new factual allegations. Throughout its Order, the Court recognized that Plaintiff previously had alleged both the existence of Visa's internal regulations, and also the fact of underlying credit agreements entered between "acquiring" banks and merchants. *See, e.g.*, Order at pp. 2:9-11, 2:22-3:5, 7:21-8:2. As the Court recognized, these limited relationships and regulations do not impose on Visa a duty to police all the merchants in its systems and are not sufficient to impose copyright or trademark liability on any Defendant. *Id.*

Just like in its original complaint, Perfect 10 has not alleged that any defendants does anything beyond providing credit card purchase transaction services, -- just as banks provide check cashing and clearing services -- pursuant to credit agreements (alleged merchant agreements) and regulations governing intake, maintenance and termination of such accounts. Simply providing more specifics concerning the alleged regulations and merchant agreements does not solve Perfect 10's pleading problem  --  these internal regulations and contracts do not constitute the requisite control over the

infringing activity, or requisite material contribution to the alleged acts of infringement.

## III.   DISCUSSION

### A.   Plaintiff Has Not Alleged New Facts Supporting Either Contributory Or Vicarious Copyright Infringement

#### 1.   No New Facts Supporting Contributory Copyright Infringement Are Alleged

To prevail on a claim for contributory copyright infringement, Plaintiff must show Defendants' (1) knowledge of the infringement by another, and (2) material contribution to the infringing activity. *Metro-Goldwyn Mayer Studios, Inc. v. Grokster, Ltd.*, 380 F.3d 1154, 1160 (9th Cir. 2004); *Ellison v. Robertson*, 357 F.3d 1072, 1076 (9th Cir. 2004); 8/6/04 Order at p. 4.  As the court explained in *Grokster*, with respect to the knowledge requirement, specific notice is too late if it comes at a time "when Defendants do nothing to facilitate, and cannot do anything to stop, the alleged infringement of specific copyright conduct."  *Grokster,* 380 F.3d at 1162.  Therefore, although this Court has noted that Plaintiff alleged notice to Defendants (8/6/04 Order at p. 4), any notice is legally irrelevant because Defendants do not provide the site or facilities used in the alleged infringing conduct, and therefore cannot stop the alleged infringement after receiving notices (*id.* at *e.g.*, pp. 6:1-25, 7:16-25).

The required element of material contribution is utterly lacking in the Amended Complaint, as it was in the original Complaint.  This, too, makes the notice element inconsequential.  Defendant financial institutions simply do not provide the "site and facilities" used by the stolen content websites to infringe, nor are Defendants alleged to directly assist in or promote the infringing activities alleged.  As this Court correctly explained in its Order:

> "[I]t is not sufficient for the Defendants to merely have contributed to the general business of the infringer.  To have materially contributed to copyright infringement, 'the . . . assistance must bear some <u>direct relationship to the infringing acts</u>.' . . . [I]n addition, the contributing conduct must be substantial."

8/6/04 Order at p. 4:17-24 (emphasis added, quoting 3-12 *Nimmer on Copyright* § 12[A][2][a] (2004), and citing *Fonovisa, Inc. v. Cherry Auction, Inc.*, 76 F.3d 259, 264 (9th Cir. 1996); *Metro-Goldwyn-Mayer Studios, Inc. v. Grokster Ltd.*, 259 F.Supp.2d 1029, 1042 (C.D. Cal. 2003), *aff'd* 380 F.3d 1154 (9th Cir. Aug. 19, 2004); *Religious Tech. Ctr. v. Netcom On-line Comm. Servs.*, 907 F.Supp. 1361, 1375 (N.D. Cal. 1995)).

1     To support a claim for contributory infringement, the alleged acts must be "directly tied to not
2 only the business operations of the infringers, but <u>specifically to the infringing conduct</u>."  8/6/04 Order
3 at p. 5:1-10 (emphasis added).  Thus, this Court recognized that, since the "only service Defendants
4 provide to the [stolen content] websites is the ability to process credit cards," and since credit card
5 processing "does not directly assist the allegedly infringing websites in copying Plaintiff's works,"
6 Defendants cannot be liable for contributory copyright infringement.  8/6/04 Order at p. 6:14-26.

     The Court expressed extreme doubt whether Plaintiff could ever amend to state a claim.  *See*
7/9/04 RT at e.g., pp. 21, 23, 25, 35, 36.  To have any chance of stating a viable claim against
Defendants, the Court ruled, "Plaintiff must establish a relationship between the financial services
provided by Defendants and the alleged infringing activity as opposed to the mere operation of the
website businesses."  8/6/04 Order at p. 7:1-3.  Plaintiff has not added any such allegations of fact in
its First Amended Complaint.

     The subsequent *Grokster* decision, as well as the logic and analysis applied by the Ninth
Circuit in *Grokster*, clearly validate this Court's analysis in its 8/6/04 Order.  In *Grokster*, defendant
software distributors were held not liable for contributory or vicarious copyright infringement even
though they -- unlike Defendants here -- supplied a file sharing software product that could be directly
used by purchasers to unlawfully copy protected material.  Since substantial lawful uses of the file
sharing software existed, the defendant distributors were protected in their selling of the software,
under the rule in *Sony Corp. v. Universal City Studios, Inc.*, 464 U.S. 417 (1984).  *Grokster*, 380 F.3d
at 1162.  By the time the plaintiff copyright owners had provided the defendant software distributors
specific notice that particular customers were using the software to infringe, the distributors already
had sold the software, and had no further ability to stop and did nothing to facilitate the infringement.
380 F.3d at 1162-63.

     With respect to the material contribution element in particular, the Ninth Circuit explained:

> While material contribution can be established through provision of site
> and facilities for infringement, followed by a failure to stop specific
> instances of infringement once knowledge of those infringements is
> acquired, the Software Distributors have not provided the site and
> facilities for infringement in the first place.  If the Software Distributors
> were true access providers, failure to disable that access after acquiring
> specific knowledge of a user's infringement might be material
> contribution.  *Netcom*, 907 F.Supp. at 1375.  Or, if the Software

> Distributors stored files or indices, failure to delete the offending files or offending index listings might be material contribution. *Napster I*, 239 F.3d at 1022. However, the Software Distributors here are not access providers, and they do not provide file storage and index maintenance. Rather, it is the users of the software who, by connecting to each other over the internet, create the network and provide the access. "Failure" to alter software located on another's computer is simply not akin to the failure to delete a filename from one's own computer, to the failure to cancel the registration name and password of a particular user from one's user list, or to the failure to make modifications to software one's own computer.

380 F.3d at 1163-64. Similarly in this case, "Defendants do not provide the means for distributing [third party websites' infringing] works to others, nor do they provide bandwidth or storage space with which to transfer or store the works." Order at p. 6:20-23.

Thus, the Ninth Circuit in *Grokster* made clear exactly what this Court recognized in its 8/6/04 Order: to be liable for contributory infringement, the defendant must provide the site and facilities used for infringement or must otherwise directly aid or assist in the <u>infringing activity</u>. Plaintiff has not alleged any new facts meeting the standard enunciated by the Ninth Circuit in *Grokster* or by this Court in its Order Granting Defendants' Motion to Dismiss. To the contrary, Plaintiff alleges that Defendants "materially contribute to transactions involving hundreds if not thousands of websites . . . by processing individual Visa and MasterCard charges." Amended Complaint, ¶ 59. This is precisely what the Court held is not enough. Therefore, the contributory infringement claim should be dismissed with prejudice.

### 2. No Facts Establishing Vicarious Copyright Infringement Liability Have Been Alleged

To state a claim for vicarious copyright infringement, Plaintiff must allege facts establishing that "Defendants have (1) the right and ability to control the infringing activity, and (2) a direct financial benefit from the infringing activity." 8/6/04 Order at p. 7 (citing *Ellison v. Robertson*, 357 F.3d 1072, 1078 (9th Cir. 2004); *see also Grokster*, 380 F.3d at 1164.

#### a) Plaintiff Still Has Not Alleged The Requisite Right And Ability To Control

Plaintiff continues, in its Amended Complaint, as in its defective original Complaint, to rely on Defendants' internal regulations governing provision of services to inbound telemarketers and other

"high risk" merchants, which include all internet merchants, not just adult entertainment websites. *E.g.*, Amended Complaint ¶¶ 14, 15, 26, 58, 61, 82 and Ex. 3. Those policies, Plaintiff alleges -- and alleged in its original complaint -- include a policy of terminating credit card processing services to merchants who have excessive "chargebacks," engage in illegal activities or otherwise violate the Defendants' policies.

But this limited, remote relationship with the millions of merchants to whom Defendants provide back-end credit clearing services cannot support a finding of the requisite control, as a matter of law. As Defendants explained in moving to dismiss the original complaint, the law in this area is clear: "Pervasive participation" in the business of the infringing party is required to find the requisite "right and ability to control." *Adobe Systems Inc. v. Canus Productions, Inc.*, 173 F.Supp.2d 1044, 1053 (C.D.Cal. 2001). "[T]he spectrum of control has, at one end, the landlord-tenant model, usually representing minimal ability of the premises owner to control the infringing activities of someone using his premises; and, at the other end, the employer-employee model, which represents maximum control by the premises owner." *Adobe Systems*, 173 F.Supp.2d at 1053.[3] Defendants here are <u>nowhere</u> on this "spectrum of control" that runs from landlords (only in some cases) to employers. Defendants are not employers, landlords, or anything in-between the two. Even though "acquiring banks" in the Visa and MasterCard systems, including Defendants Humboldt and CardService, necessarily enter banking credit and service relationships with merchants (as Perfect 10 previously alleged and the Court recognized -- *see* 8/6/04 Order at p. 2:10-11, Amended Complaint, ¶¶ 16-22), Defendants do not have any editorial or other control rights over any of the creation, hosting or transmission of any graphics alleged to infringe. Defendants are simply financial institutions, one of whom, a bank not related to Visa, has extended credit to merchants, the rest of whom provide a data transfer system that allows for the near-instantaneous approval and clearing of tens of millions of daily consumer credit purchases worldwide. The requisite "control" does not flow from that relationship, as

---

[3] See, Defs. Consolidated Mem. in Support of Motion to Dismiss original Complaint, filed 4/19/04 at p. 14.

matter of law.[4]

Moreover, the control must be *related to* the infringing activity to support vicarious liability. Even in the parent-subsidiary corporate context, "a parent corporation <u>cannot</u> be held liable for the infringing actions of its subsidiary <u>unless</u> there is a <u>substantial and continuing connection</u> between the two *with respect to the infringing acts*." *Frank Music Corp. v. Metro-Goldwyn-Mayer, Inc.*, 886 F.2d 1545, 1553 (9th Cir. 1989), *cert denied*, 494 U.S. 1017 (1990) (emphasis added). "[T]here must be indicia beyond the mere legal relationship showing that the parent is actually involved with the decisions, processes, or personnel <u>directly responsible for the infringing activity</u>." *Banff v. Limited, Inc.*, 869 F. Supp. 1103, 1109 (S.D.N.Y. 1994) (emphasis added). Following *Frank*, the district court in *Banff* explained that "the parties' paths must cross on a daily basis, and the character of this intersection <u>must be such that the party against whom liability is sought must be in a position to control the personnel and activities responsible for the direct infringement</u>." *Banff*, 869 F. Supp. at 1109; *accord, Demetriades v. Kaufman,* 690 F.Supp. 289, 293-294 (S.D.N.Y. 1988).

As this Court recognized in dismissing Plaintiff's original Complaint, neither Defendants' policies or regulations, or the bank-merchant agreements that allow merchants to participate in the Visa and MasterCard systems, provide the right to supervise even the merchants' day-to-day activities, much less the necessary specific right to direct or control the independent merchants' alleged infringing activities. As the Court explained:

---

[4] Perfect 10 never has alleged that it ever gave notice of infringing activities to either Humboldt or CSI, the only two defendants alleged to be in a direct contractual relationship with any merchants. But the fact of notice is irrelevant by itself. *See Grokster*, 380 F.3d at 1162; 8/6/04 Order at p. 4:10-16. Defendants explained at length in earlier briefing that there is no support under the common law, state statute, or the federal Copyright or Trademark Acts to support the imposition of a duty to police, or terminate content-neutral financial transaction services to, customers whom plaintiff accuses of unlawful activity. "Notice" of unlawful conduct does not create any legal duty on Defendants' part absent a special relationship with either the tortfeasor or the victim. Such a special relationship <u>might</u> exist if Defendants were landlords of the tortfeasor (i.e., if defendants were somewhere on the "spectrum of control" referred to in *Adobe Systems, supra*), but not when, as here, Defendants merely provide financial services to, or act as banks for, otherwise unrelated merchants in the Visa (or MasterCard) system. *See* Defendants' Consolidated Mem. in Support f Motion to Dismiss, filed 5/19/04 at pp. 7-11; *see, esp. Mid-Cal Nat'l Bank v. Federal Reserve Bank*, 590 F.2d 761, 763 (9th Cir. 1979); *Lockheed Martin Corp. v. Network Solutions, Inc.*, 194 F.3d 980, 984 (9th Cir. 1999); *Emery v. Visa Int'l Serv. Ass'n*, *supra,* 95 Cal.App.4th at 956 (2002). Thus, the limitations on secondary copyright liability are in accord with common law duty analysis.

> First, the only enforcement mechanism that is within Defendants' power is the threat of rescinding [merchants'] financial services. However, . . . the allegedly infringing websites will be able to continue their alleged infringing conduct regardless of whether Defendants blacklist them. Therefore, <u>Defendants' ability to rescind their services does not indicate control over the websites' alleged infringing actions</u>.
>
> Second, the existence of Defendants' internal regulations has no bearing on the ability or right of Defendants to control the conduct of a third party. Even if, as Plaintiff contends, Defendants monitor the allegedly infringing websites on a regular basis, <u>Defendants still have no basis for dictating content to those websites. Third party websites are not bound by Defendants' internal regulations</u>. Defendants have no contractual right to dictate the websites' content <u>nor do Defendants have the authority to shut down the websites' servers, delete any infringing material they find, or prevent the transmission of such material</u>.

Order at p. 7:16-8:2 (emphasis added). Plaintiff has not added factual allegations that cure these fatal defects identified by the Court.

At the hearing on Defendants' motion to dismiss the original Complaint, Plaintiff's counsel relied on *A&M Records v. Napster, Inc.*, 239 F.3d 1004 (9th Cir. 2001) ("*Napster*"), as the best case supporting Plaintiff's copyright claims. 7/9/04 RT at pp. 31:11-34. The Court properly distinguished *Napster* as quite different from the present situation for several reasons. <u>First</u>: because defendant Napster actually supplied the software directly used to unlawfully copy. <u>Second</u>: because Napster maintained an index of available files and thus "directly controlled" whether users of the software it supplied "could see and therefore download an infringing file." <u>Third</u>: because "Napster had the ability to prevent the distribution of copyrighted files by removing them from the index." 8/6/04 Order at p. 8:3-9, citing *Napster*, 114 F.Supp.2d 896, 906, 920-922 (N.D. Cal. 2000), *aff'd* 239 F.3d 1004 (9th Cir. 2001). The proof that this Court properly distinguished *Napster* in its Order is obvious from the fact that the Ninth Circuit distinguished *Napster* in exactly the same way in its subsequent *Grokster* decision. 380 F.3d at 1165 ("we found *Napster* had the right and ability to supervise Napster users because it controlled the central indices of files, users were required to register with Napster, and access to the system depended on the validity of a user's registration.").

The only new substantive allegation made by Plaintiff in its lengthy Amended Complaint is that Defendants Humboldt, First Data Corporation and CSI -- but <u>not</u> Visa or Mastercard -- have entered into "standard credit agreements" (called "Merchant Agreements") -- with the merchants they

have direct banking relationships with. Amended Complaint ¶¶ 16- 24, and Ex. 1. But as the Court recognized in its Order, Plaintiff previously had alleged that all merchants authorized to accept Visa or MasterCard do so pursuant to agreements with an acquiring bank. *See* 8/6/04 Order at pp. 2:10-11, 7-8. Neither these agreements nor Defendants' internal policies provide control adequate to impose liability on Visa. *Id.* at pp. 7-8. Plaintiff cannot cure the defect in its complaint simply by alleging the credit agreement in more detail. More important, the mere fact of an agreement between a Visa or MasterCard-affiliated "acquiring" bank and a merchant does not provide the requisite "contractual right to dictate the website's content." These agreements certainly do not provide <u>Visa</u> (or any other defendant here) "the authority to shut down the websites' services, delete any infringing material they find, or prevent the transmission of such material" 8/6/04 Order at pp. 7:25-8:2. Nor has Plaintiff alleged such "right or ability to control the alleged <u>infringing conduct</u> of the websites." *Id.* at p. 8:14-15 (emphasis in original).

In *Grokster*, the Ninth Circuit unequivocally affirmed the pleading standard applied by this Court, when it juxtaposed the liability of a dance hall operator (or flea market owner) against the non-liability of a typical landlord:

> The dance hall operator is liable, while the landlord escapes liability, because the dance hall operator has the right and ability to supervise <u>infringing conduct</u> while the landlord does not.

380 F.3d at 1164 (emphasis added); *see also Fonovisa v. Cherry Auction*, 76 F.3d 259, at 262-263 (9th Cir. 1996). Because the only new factual allegations do nothing more than recite a form credit and processing agreement in more detail than was previously alleged in the original Complaint, and because such financial services agreements do not provide the requisite control, Plaintiff's vicarious copyright liability claim must be dismissed with prejudice.[5]

---

[5] Perfect 10 has alleged that "Defendants dictate what products and services a merchant sells. Merchants cannot sell different products without submitting a formal request to defendants and receiving Defendants' express pre-approval." Amended Complaint, ¶ 24. This allegation is not supported by the Merchant Agreement that Perfect 10 attached to the Amended Complaint. The allegation is also plainly absurd on its face, and also legally irrelevant. Does Plaintiff seriously contend that all merchants have to seek pre-approval from Visa and MasterCard for all goods and services they sell? Does Macy's need approval from Visa to decide what shoes to sell? Does Pizza Hut have to ask permission from MasterCard to sell a pineapple pizza? Just as Macy's is not required
Continued on the next page

### b) Direct Financial Benefit

The Court noted in its prior order that the Complaint "include[d] facts that might indicate a financial benefit to Defendants as a result of the draw from the alleged infringing images." Order at p. 8. While Defendants believe that Plaintiff's allegations in this regard are overstated and incorrect, they do not need to dispute those allegations at this time. Because Plaintiff has not and cannot allege the necessary "right or ability to control the allege infringing conduct" of any "stolen content websites," it does not matter whether or not Plaintiff has adequately alleged any direct financial benefit.

### B. Plaintiff Has Not Alleged New Facts Curing The Defects In Its Trademark Infringement Claims

#### 1. No Contributory Infringement Is Alleged

Liability for "secondary trademark infringement is even narrower than that under copyright law." Order at p. 9.[6] To be liable for contributory trademark infringement defendant must either "induce a third party to infringe the plaintiff's trademark or suppl[y] a product to a third party with actual or constructive knowledge that the product is being used to infringe the [mark]." *Id.* at p. 9:3-7 (quoting *Lockheed Martin Corp v. Network Solutions, Inc.*, 194 F.3d 980, 983 (9th Cir. 1999)). *See also, Inwood Laboratories, Inc. v. Ives Labs. Inc.*, 456 U.S. 844, 855 (1982).

As this Court pointed out in its Order, Plaintiff has not presented any <u>facts</u> supporting its conclusory allegation that Defendants "are knowingly inducing" trademark infringement by any unrelated website operators. The conclusory allegation by itself is insufficient. 8/6/04 Order at p. 9:8-15. Further, since Defendants are only alleged to provide content-neutral credit processing services,

---

Continued from the previous page

to seek pre-approval from Visa and MasterCard for all the items it sells in its department stores, third party websites are not required to seek pre-approval for the services they may offer. But, more important, even if Defendant Cardservice by contract required that merchants obtain CSI's approval before changing the services or products they offer, that still does not rise to the requisite level of participation in and supervision over content creation -- the infringing conduct.

[6] Citing *Sony Corp.*, *supra*, 464 U.S. at 439; *see also Fonovisa*, 76 F.3d at 265; *Hard Rock Café Licensing Corp. v. Concession Services, Inc.*, 955 F.2d 1143, 1150 (7th Cir. 1992).

1 services which Plaintiff cannot allege to be directly used in any trademark infringement of Perfect 10's trademark, Plaintiff cannot state a claim for contributory trademark infringement. Order at p. 9:16-21. Plaintiff has not alleged any new facts which cure the defects in the original Complaint.

### 2. No Vicarious Trademark Infringement Is Alleged

As with the other claims previously discussed, Plaintiff has not alleged any new facts which would support a claim for vicarious trademark infringement. To do so, Plaintiff must have alleged facts establishing that:

> Defendants and the infringers must 'have an apparent or actual partnership, have authority to bind one another in transactions with third parties or exercise joint ownership or control over the infringing product.'"

Order at pp. 9:24-10:7 (quoting *Hard Rock Café*, *supra,* 955 F.2d 1143, 1150 (7th Cir. 1992)). No such partnership or other intimate relationship between any Defendant and any "stolen content website" was alleged in the original Complaint (Order at p. 10:1-2), nor has that defect been cured in the Amended Complaint. Indeed, as the Court explained, Plaintiff has been pleading to the "wrong legal standard." *Id.* at pp. 9:9-13, 10:3-7. Plaintiff still is, and Plaintiff's continued attempt to plead a trademark violation claim is not just baseless, but is exceptionally so.

### C. No Viable California State Trademark Claim Is Alleged

As the Court explained in its first Order, Plaintiff's state trademark claim, for wrongful use of a registered mark under California Business & Professions Code § 14335, must be dismissed for the same reason that Plaintiff's federal trademark claims must fall: (1) Defendants are not alleged to themselves have used Plaintiff's marks without permission; and (2) Plaintiff cannot plead secondary trademark infringement. Order at p. 10.

### D. The California Right of Publicity, State Unfair Competition And False Advertising Claims Also Must Be Dismissed

This Court recognized in its Order that *Emery v. Visa Int'l*, *supra*, is directly on point and requires dismissal of Plaintiff's right of publicity and false advertising claims based on alleged "aiding and abetting," and also requires dismissal of Plaintiff's claim under California Business & Professions Code §§ 17200 et seq. Order at pp. 10-12. Plaintiff has not alleged any new material facts adequate

to revive these claims. Visa joins the arguments made by the other Defendants as to these claims.[7]

## IV. CONCLUSION

Plaintiff improperly invokes federal trademark and copyright laws, as well as California state unfair competition and other tort laws, in an attempt to impose liability on bank card payment companies who have nothing whatsoever to do with the allegedly infringing activities of third parties. Falling plainly outside even the most ambitious extension of these laws, Plaintiff Perfect 10 has failed -- once again -- to state a claim upon which relief can be granted. As the Ninth Circuit explained in *Grokster*, the copyright and trademark laws must be narrowly construed by the Courts; it is for Congress to amend the statutes if expanded protection is deemed necessary. 380 F.3d at 1167.

In fact, the unsupported extension of copyright law Perfect 10 seeks is contrary to public policy. Perfect 10's overriding legal theory extends far beyond the regulation of internet access to unpermitted copying of adult conduct. Defendants provide transaction processing services for tens of millions of independent merchants worldwide and similarly process tens of millions of credit transactions per day. This Court already has recognized the global economic implications of accepting Plaintiff's invitation to impose on financial institutions a duty to monitor and police the conduct of all merchants for whom they provide credit card transaction processing services -- enormous unwarranted burden and expense would be imposed on the national and international credit system.

Because the Court has already once granted Plaintiff leave to amend, and because Plaintiff has failed to allege any significant or material factual allegations in its lengthy and detailed Amended Complaint, the Court should dismiss all remaining claims with prejudice.

---

[7] Visa also joins in all other arguments made by its co-defendants.

| | | |
|---|---|---|
| 1 | DATED:  September 24, 2004 | Respectfully submitted, |
| 2 | | TOWNSEND AND TOWNSEND AND CREW LLP |
| 4 | | By: _____/s/_____<br>     DANIEL J. FURNISS<br>     MARK T. JANSEN<br>     JOHN C. BAUM |
| 6 | | Attorneys for Defendant<br>VISA INTERNATIONAL SERVICE ASSOCIATION |

60306771 v1

# PROOF OF SERVICE

I, Linda M. Tan, declare: I am employed in the City and County of San Francisco, California in the office of a member of the bar of this court at whose direction this service was made. I am over the age of eighteen and not a party to this action. My business address is Townsend and Townsend and Crew LLP, Two Embarcadero Center, Eighth Floor, San Francisco, California, 94111.

On September 24, 2004, I served the following documents exactly entitled: **DEFENDANT VISA INTERNATIONAL SERVICE ASSOCIATION'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT** on the interested parties in this action as follows:

| | |
|---|---|
| Howard E. King, Esq.<br>Stephen D. Rothschild, Esq.<br>KING, HOLMES, PATERNO & BERLINER LLP<br>1900 Avenue of the Stars, 25th Floor<br>Los Angeles, CA  90067<br>(310) 282-8989 (tel); (310) 282-8903 (fax)<br>email: Rothschild@khpblaw.com | Jeffrey N. Mausner, Esq.<br>John R. Yates, Esq.<br>BERMAN, MAUSNER & RESSER<br>11601 Wilshire Boulevard, Suite 600<br>Los Angeles, CA  90025-1742<br>(310) 473-3333 (tel); (310) 473-8303 (fax)<br>email: JeffMausner@bmrlaw.com |
| Andrew P. Bridges, Esq.<br>Winston & Strawn LLP<br>101 California Street, Suite 3900<br>San Francisco, CA 94111<br>(415) 591-1482 (tel); (415) 591-1400 (fax)<br>email: abridges@winston.com | Michael H. Page, Esq.<br>R. James Slaughter, Esq.<br>Keker & Van Nest LLP<br>710 Sansome Street<br>San Francisco, CA 94111-1704<br>(415) 391-5400 (tel); (415) 397-7188 (fax)<br>email: mhp@kvn.com<br>email: rjs@kvn.com |

[ ]   HAND-DELIVERY: I caused such document[s] to be delivered by a courier service on the same day.

[ ]   FACSIMILE TRANSMISSION: I caused such document[s] to be sent by facsimile transmission to the above-listed fax number for the party(ies) indicated.

**E-FILING AND/OR E-MAILING DOCUMENT**
[ ]   ELECTRONIC TRANSMISSION: I caused said document to be sent by electronic transmission to the e-mail address indicated for the party(ies) listed above. The transmitting terminal address is_____@townsend.com.

**ONLY E-FILING DOCUMENT**
[x]   ELECTRONIC TRANSMISSION: I declare that a copy of said document(s) was filed electronically on September 24, 2004. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct, and that this declaration was executed on September 24, 2004, at San Francisco, California.

_____/s/_____<br>
Linda M. Tan

60306771 v1