HOWARD E. KING (State Bar No. 077012)
STEPHEN D. ROTHSCHILD (State Bar No. 132514)
KING, HOLMES, PATERNO & BERLINER, LLP
1900 Avenue of the Stars, 25th Floor
Los Angeles, CA 90067
Telephone: (310) 282-8989
Fax: (310) 282-8903

JEFFREY N. MAUSNER (State Bar No. 122385)
JOHN R. YATES (State Bar No. 120344)
BERMAN, MAUSNER & RESSER
11601 Wilshire Boulevard, Suite 600
Los Angeles, California 90025-1742
Telephone: (310) 473-3333
Facsimile: (310) 473-8303
E-mail: JeffMausner@bmrlaw.com

DANIEL J. COOPER (State Bar No. 198460)
General Counsel, Perfect 10, Inc.
~~RANDY LEWIS (State Bar No. 210444)~~
~~Associate General Counsels, Perfect 10, Inc.~~

Attorneys for Plaintiff PERFECT 10, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA – SAN FRANCISCO DIVISION

| | |
|---|---|
| PERFECT 10, INC., a California corporation,<br><br>Plaintiff,<br><br>v.<br><br>VISA INTERNATIONAL SERVICE ASSOCIATION; FIRST DATA CORP, a corporation; CARDSERVICE INTERNATIONAL, INC., a corporation; MASTERCARD INTERNATIONAL INCORPORATED, a corporation; HUMBOLDT BANK, a national banking association; and DOES 1 through 100, inclusive,<br><br>Defendants. | ~~Case No.____________~~<br>Case No. C04-00371 JW (PVT)<br>[Assigned for all purposes to Judge James Ware]<br><br>FIRST AMENDED COMPLAINT ~~FOR:~~ FOR:<br>(1) COPYRIGHT INFRINGEMENT;<br>(2) TRADEMARK INFRINGEMENT;<br>(3) TRADEMARK DISPARAGEMENT;<br>(4) WRONGFUL USE OF A REGISTERED MARK;<br>(5) VIOLATION OF RIGHT OF PUBLICITY;<br>(6) UNFAIR COMPETITION;<br>(7) FALSE AND MISLEADING ADVERTISING<br>~~(8) LIBEL;~~<br>~~(9) INJUNCTIVE RELIEF; and~~<br>~~(10) INTENTIONAL INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE~~<br><br>~~[~~DEMAND FOR JURY TRIAL~~]~~ |

APPENDIX A

Plaintiff Perfect 10, Inc. ("Perfect 10" or "plaintiff"), ~~for its complaint, based upon federal question and pendent jurisdiction, makes the following allegations against~~ alleges as follows against defendants Visa International Service Association ("Visa"); First Data Corp ("FDC"); Cardservice International, Inc. ("CSI"); MasterCard International ("MasterCard"); Humboldt Bank ("Humboldt"); and Does 1-100 (collectively, ~~the~~ "Defendants").

**JURISDICTION, VENUE, and INTRADISTRICT ASSIGNMENT**

1. Jurisdiction. This action arises under the Copyright Act of the United States, 17 U.S.C. §§ 501 *et seq*., and the Lanham Act, 15 U.S.C. §§ 1051, *et seq.* This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331, 1338(a) and (b), and principles of pendent jurisdiction.

2. Venue. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2), (c), and § 1400(a).

3. Personal jurisdiction. Personal jurisdiction is proper over the Defendants because they either reside in California or the wrongful activity at issue in this case concerns Defendants' operation of commercial businesses through which Defendants' knowingly transact business, share information and files, and enter into contracts with individuals in California, including within the County of San Francisco. Each of the Defendants, therefore, has purposefully availed itself of the privilege of doing business in California, and critical elements of Defendants' wrongdoing occurred in this State.

4. Intradistrict Assignment. A substantial part of the events which give rise to the claims occurred in San Francisco County, California, where defendant Visa is located.

**NATURE OF THE ACTION**

5. The Defendants in this case, who are among America's most prominent financial institutions, are knowingly providing crucial transactional support services for the sale of millions of stolen photos and film clips worth billions of dollars that

belong to Perfect 10 and third-parties, as follows:

**A. <u>The Stolen Content Websites</u>**

6. Hidden in undisclosed locations around the world, thieves from every country are operating websites ("Stolen Content Websites") that routinely offer for sale to the public stolen still and moving images consisting of (i) scans from Perfect 10 Magazine and images from its website perfect10.com, (ii) scans of supermodels from other magazines, and (iii) the most treasured film clips (usually nude scenes of top actresses) ever created by motion picture studios. Webmasters who run Stolen Content Websites also typically engage in consumer fraud or other illegal acts by doing one or more of the following: a) charging the consumer's credit card without authorization, b) falsely stating that memberships are free, c) promising nudes or sexually explicit videos of celebrities that don't exist, d) providing rape, incest, and/or bestiality images or falsely promising such images, e) spamming, and f) tricking the consumer into paying for other memberships without their knowledge. Stolen Content webmasters typically use sham Internet registrations with bogus addresses and contact information so that they are virtually impossible to track down and sue.

7. Stolen Content ~~webmasters~~<u>Websites</u> cannot exist without the knowledge and ~~assistance~~ <u>direct participation</u> of the financial institutions ~~who~~<u>that</u> process the credit card transactions for such unlawful material and ~~who,~~<u>that,</u> as a result, effectively act as knowing fences for the sale of billions of dollars worth of stolen property.

**B. <u>The Business of Defendants Herein</u>**

8. Visa and MasterCard are joint ventures, each owned by associations of thousands of banks, including Humboldt, which comprise a vast network which processes hundreds of millions of dollars in payment card transactions every day. The member banks issue MasterCard and Visa ~~payments,~~<u>cards,</u> and contract with merchants to accept their payment cards and sell sales drafts generated from use of those cards to the members, at a discount.

9. Typically, when a merchant accepts a payment card from a customer, the merchant electronically and contemporaneously presents the transaction to an acquiring member bank, such as Humboldt, or to a third-party processor (known in the credit card industry as an "Independent Service Organization" ("ISO")) acting as agent for a member bank, for ~~verification and processing.~~ immediate purchase at a discount from the price being paid by the customer. FDC, including its wholly-owned subsidiary, CSI, is one of the largest, if not the largest, such ISO.

10. The merchant has a contract with the acquiring bank or ISO that obligates the bank or ISO to purchase the customer charges from the merchant immediately, provided the charges meet certain standards. Visa and MasterCard are virtually present at the time of each and every transaction on their branded cards. The acquirer (or the ISO through which the acquirer does business) presents the transaction ~~data to MasterCard or Visa. The bank that issued the payment card then notifies MasterCard or Visa whether it authorizes or rejects the transaction. The association relays that information to the acquirer, which forwards the information to the merchant's credit card terminal. If the transaction is accepted, the merchant transmits a request for payment to the acquirer, which relays the request through the association to~~ to MasterCard or Visa for verification of a myriad of characteristics, including, but not limited to, that the credit card is not stolen, over its limit, expired, or otherwise incapable of incurring charges. MasterCard or Visa authorizes or rejects the transaction. However, Visa and MasterCard have chosen to ignore the obvious illegality of each and every Stolen Content Website transaction that they review.

11. If the transaction is authorized, the acquirer purchases it from ~~the issuer. The acquirer purchases the transaction from the~~ merchant, at a discount. The foregoing process occurs electronically, with the result ~~being~~ that a merchant can make a sale using a payment card and simultaneously sell same to his acquiring bank, at a discount, receiving the net proceeds immediately.

10.12. Member banks, including Humboldt, often delegate responsibility for processing payment card transactions to third party processors such as FDC and CSI. That delegation of responsibility includes responsibility for policing merchants, supervising merchants to makingmake certain that merchants comply with Visa and MasterCard rules, and terminating illegal businesses from the Visa and MasterCard systems. Unless otherwise apparent from the context, references in this complaint to "FDC" include Humboldt and FDC's wholly owned subsidiary CSI.

11.13. Visa and MasterCard receive a fee for eachevery single transaction on their branded cards. They [PAGE BREAK INSERTED]

**C. Defendants' Right and Ability to Control the Stolen Content Websites**

14. Visa and MasterCard are also responsible for administering the Visa and MasterCard credit card networks. For example, MasterCard and Visa rules prohibit member banks andMasterCard credit card networks, and they impose many requirements as a condition to ISOs and acquiring banks participating in the system. In addition to prohibiting member banks and third-party processors from providing services to merchants engaged in illegal activity. The, the associations' rules require member banks and third party processors, such as including FDC, to investigate and terminatemerchants suspected of engaging in illegal activity and to terminate those merchants that are engaged in illegal activity. The associations dictate "interchange rates," or the fees that acquirer banks must pay issuing banks for each transaction. Visa and MasterCard require member banks to terminate the accounts of merchants whose "chargeback" ratios exceed allowable limits. A "chargeback" occurs when a customer requests reversal of a charge that is fraudulent, unauthorized, or otherwise improper.

12. The associations publish an industry-wide "black list" of terminated merchants to which all members and third party processors have access. The black list is known as the MATCH list or the Combined Terminated Merchant File

~~("CTMF"). All members of Visa and MasterCard, and all third-party processors, have access to the black list. It is virtually impossible for a black listed merchant to obtain credit card charge processing services from a reputable member bank or third party processor. The black listed merchants that are able to obtain processing services must pay exorbitant rates, often to unreliable processors and/or other third-parties.~~

~~13. Because the webmasters for Stolen Content Websites often engage in a variety of fraudulent sales techniques, their chargeback ratios are often quite high, but in at least some cases, they have not been terminated with chargeback rates far above allowed Mastercard and Visa limits. Yet, defendants continue to provide credit card services to such websites and have not placed such merchants on the black list.~~

15. Visa and MasterCard rules and regulations require each and every merchant that wishes to secure the benefits of participation in the Visa and MasterCard systems to enter into a formal Merchant Agreement with an acquirer, pursuant to which Merchants are licensed to accept MasterCard and Visa charges and participate in the systems. Visa and MasterCard rules dictate many of the significant terms and conditions of such agreements.

16. Plaintiff is informed and believes and based thereon alleges that Humboldt, FDC and CSI have entered into Merchant Agreements with many owner/operators of Stolen Content Websites. Attached hereto as Exhibit "1" and incorporated herein by reference is a copy of a standard CSI Merchant Agreement. Perfect 10 is informed and believes and based thereon alleges that the provisions of the CSI Merchant Agreement are typical of merchant agreements throughout the Visa and MasterCard systems.

17. Paragraph 1.01 of the CSI Merchant Agreement requires Stolen Content Websites to accept all MasterCard and Visa charge cards presented to them.

18. Paragraph 1.02 of the CSI Merchant Agreement requires Stolen Content Websites to display defendants' promotional materials with defendants' proprietary names and symbols, unless they are "expressly exempted" by Visa or MasterCard. (Ex. "1," ¶ 1.02.)

19. Paragraph 3.01, entitled "Compliance with Law," imposes the following restrictions on Stolen Content Websites:

> Merchant shall comply with all laws, ordinances and regulations applicable to Merchant, Merchant's business and any Card transaction, including without limitation all state and federal consumer credit and consumer protection statutes and regulations. Neither Bank [Humboldt] nor Cardservice International shall have any obligation to notify or advise Merchant of the existence of such laws or changes in such laws. *Merchant warrants that it has the right to sell the products it sells and to use the names it uses.* (Emphasis added.)

20. Pursuant to Visa and MasterCard rules and regulations, and to the contractual rights they insist upon, defendants direct merchants who accept their credit cards and who operate Internet websites to alter or delete contents of such websites in order to comply with laws and/or Visa and MasterCard rules, regulations ~~14. When MasterCard or Visa learn~~and policies. When MasterCard or Visa learns of a merchant engaged in illegal, fraudulent, or otherwise improper business practices, ~~they are supposed to~~their own regulations require them to cause member banks to investigate and, depending on the nature of the misconduct, terminate the merchants from the Visa and MasterCard systems. The rules of both associations strictly prohibit members from servicing illegal businesses.

21. Defendants assert the right, which they frequently exercise, to suspend merchants from the Visa and MasterCard systems, or to exclude them altogether. For example, pursuant to paragraph 3.04(b) of the CSI Merchant Agreement,

Defendants have the right to terminate Stolen Content Websites "immediately" if the merchant "violates any term, condition, covenant or warranty of this Agreement."

22. Plaintiff is informed and believes and based thereon alleges that the grounds for suspending and/or entirely excluding merchants from the system often are that Defendants believe that the merchants have engaged in illegal transactions and/or sell illegal products or services. If Defendants exclude a merchant from the system, all members of the Visa and MasterCard systems, and all ISOs, are prohibited from providing charge card processing services to that merchant, directly or indirectly through third party aggregators.

23. Paragraph 7.01 of the CSI Merchant Agreement requires merchants to use defendants' preapproved forms when accepting payment by credit card.

24. Defendants dictate what products and services a merchant sells. Merchants cannot sell different products without submitting a formal request to defendants and receiving Defendants' express pre-approval.

25. In addition to the foregoing, Defendants dictate the amount of credit card sales Stolen Content Websites may make each month. Since Defendants know that virtually all of the Stolen Content Websites' business is done through charge card payments, Defendants know that each time they increase the volume limits of a Stolen Content Website, they are also increasing the number of illegal transactions on such sites.

26. Plaintiff is informed and believes and based thereon alleges that, before defendants will allow a merchant to participate in the Visa and MasterCard systems, the Visa and MasterCard rules require the merchant to establish that it is financially responsible and that the owner/operators have acceptable backgrounds and business practices. Among other things, defendants inspect websites and business premises, and obtain and review merchants' bank statements, tax returns, credit reports, and a merchant's other financial information before allowing the merchant into the system. Plaintiff is informed and believes and based thereon alleges that, based on their

reviews of Stolen Content Websites applying for merchant accounts, Defendants know when Stolen Content Websites maintain no physical presence in the United States in order to evade criminal and civil liability for their illegal conduct.

27. When Defendants receive what they deem to be an excessive number of chargebacks on the accounts of Stolen Content Websites, Defendants place even more limitations on the account holders and require even more detailed information about their businesses.

28. Plaintiff is informed and believes and based thereon alleges that Defendants also require Stolen Content Websites to give Defendants permission to use their names in their advertising and promotional activities.

29. Defendants also regularly assert their right to require questionable merchants, such as the Stolen Content Websites, to maintain substantial reserve accounts with Humboldt in order to secure potential losses as a result of the misconduct of such merchants.

**C.D. Defendants' Knowing Participation in the Stolen Content Websites' Illegal Conduct**

15.30. Defendants, jointly with the Stolen Content Websites, and individually,are engaged in (i) the willful and systematic infringement of the intellectual property rights of Perfect 10 and third-party publishers, film owners, and celebrities, and (ii) an ongoing deception of consumers.

16.31. The explosion of pornography on the Internet has been a windfall to defendants.Defendants. Websites that provide pornographic images generate hundreds of millions of transactions, each one resulting in a fee to defendants. Since January of 2003,separate fee to Defendants. Since 2002, Perfect 10 repeatedly has identified specific Stolen Content Websites to each of the defendantsdefendant herein and asked each of the defendants to investigate and cease and desist servicing those illegal businesses. Perfect 10 has given defendantsDefendants such notice orally, in writing, and by e-mail. The notices have included screen shots and other

evidence of the websites' illegal conduct. Defendants, and each of them, have failed and refused to investigate the Stolen Content Websites and to discontinue facilitating and participating in the business of the websites. Copies of many such notices are attached hereto as Exhibit "2" and incorporated herein by reference.

~~17.~~32. Defendants knowingly continue to supervise and materially contribute to ~~participate in~~ the Stolen Content Websites' illegal conduct by authorizing their member banks to acquire customers' payment card charges for access to those websites, in violation of MasterCard and Visa Rules; providing confirmations for charges for the Stolen Content Websites, accepting fees for each charge card transaction on the Stolen Content Websites; and failing and refusing to enforce their rules prohibiting member banks and ISOs from servicing businesses engaged in illegal activities ~~.~~, directly or indirectly, and enforcing other rules to assure that they profit from the Stolen Content Websites.

33. Defendants aid and abet the Stolen Content Websites' illegal transactions by allowing them to process charges anonymously through off-shore locations that have no existence except as conduits for processing charge card transactions.

~~18.~~34. While most member banks and third-party processors refuse to acquire for pornographic websites, ~~FDC specializes~~ Humboldt, FDC and CSI have at all times material herein specialized in servicing pornographic ~~websites because by~~websites. By charging them significantly more than conventional merchants pay for the same services, including by levying fees of as much as $100 per chargeback, ~~FDC~~ Humboldt, FDC and CSI significantly increase ~~increases its~~their profit margins.

~~19.~~35. Defendants' branded payment cards are overwhelmingly the primary way by which customers pay to view Stolen Content Websites. Acceptance of ~~Mastercard~~ MasterCard and Visa is ~~in fact~~ so expected by consumers as a form of online payment ~~,~~ that permission from ~~Mastercard~~MasterCard and Visa to accept their cards is tantamount to a ~~pre-condition for~~precondition for running a successful

online business, and gives such websites a significant competitive advantage. Inability to accept Visa and MasterCard would make it impossible for an online website selling adult images to compete and operate at a profit. If ~~defendants~~Defendants enforced their own rules when they received notice of a Stolen Content Website, instead of turning a blind eye to the illegality, the Stolen Content Websites would be eradicated. Perfect 10 is informed and believes, and based thereon alleges, that Defendants do not enforce their own rules against websites that they know are Stolen Content Websites ~~in many cases because~~because Defendants do not ~~defendants do not~~ want to lose the substantial revenues and profits they receive from the websites.

~~20.~~36. More specifically, Defendants are engaged in the following unlawful practices:

- Defendants are knowingly and intentionally profiting from and providing critical support for the infringement of Perfect 10's copyrights and rights of publicity (by assignment) by reason of the ~~unauthorized reproduction, display, distribution, and sale of~~ distribution of photographs owned by Perfect 10 on Stolen Content Websites.
- Defendants are knowingly and intentionally profiting from and providing critical support to sell millions of stolen images and film clips worth billions of dollars which rightfully belong to third-party publishers and film owners.
- Defendants are knowingly and intentionally profiting from and providing critical support for the infringement of the copyrights of Perfect 10 and publicity rights of Perfect 10 and others by the unauthorized reproduction, creation of derivative works from, display, advertisement and sale of illegally altered photographs of celebrities and models, which falsely purport to show such celebrities performing sexual acts and in various nude poses.

- Defendants are knowingly and intentionally profiting from and providing critical support for Stolen Content Websites which also compete unfairly by engaging in the following acts: a) making false claims about their content, such as offering images of "Christina Aguilera Masturbating!"~~"Sandra Bullock Fucking!" [celebmovie.com, Exhibit 1] "Britney Spears Sucks Cock! we have proof on video," [Hollywoodextreme.com, Exhibit 1], "Raunchy Stolen Fuck Pics: See The Hottest Female Tennis Player Get Both Holes Penetrated At Once!!!" [with references and pictures of Anna Kournikova] [celebrityorgy.com, Exhibit 1], "J-Lo fucking like a slut," "Lopez takes it big up her big beautiful ass!" [Babylon-x.com website, Exhibit 1];~~ b) falsely claiming that they are "free," c) grossly misstating the number of images on their sites, claiming for example in one case that they have 90,000 images when they have less than 3,000, d) using multiple "fronts" leading to the same content, e) requiring consumers to affirmatively uncheck a small box, lest they are unwittingly billed for memberships they did not want in the first place, and f) "spamming consumers.

~~21. With defendants'~~37. With Defendants' support, the Stolen Content Websites have become so brazen that they actually flaunt their illegality. One such website, touting an illicit video of Paris Hilton, proclaims, "Load it now before the lawyers take it down!"

**~~D.~~E. The Harm that Defendants' Participation in the Businesses of the Stolen Content Websites Has Caused to Perfect 10**

~~22.~~38. Based on the foregoing, Defendants are aiding and abetting unfair competition against Perfect 10 and materially contributing to the infringement of Perfect 10's intellectual property rights~~,~~ by providing critical support for and participating in the sale of vast quantities of content misappropriated from Perfect 10 and third parties~~ to this action~~, thereby diverting consumers from Perfect 10's

products and services to Stolen Content Websites. Despite notice from Perfect 10 of the ongoing violation of its rights on Stolen Content Websites, including infringements specifically alleged in this Complaint, and other fraudulent acts perpetrated by such websites, Defendants have continued wrongfully to purchase the specific credit card sales drafts generated by the illegal sales, at a discount, thereby providing the only profitable means by which a Stolen Content Website can consummate a sale. Nearly all Stolen Content Website sales are credit card transactions. process transactions for such websites.

23. The Defendants' conduct constitutes a willful infringement of Perfect 10's copyrights, trademarks and publicity rights; willful violations of the Lanham Act; and unfair competition under the common law and California statutes.

24.39. Perfect 10 has been forced to spend over $8 million in attorneys fees over the last two and a half years attempting to stop the widespread theft on the Internet of both Perfect 10 images and third-party intellectual property, which. That theft has made it impossible for Perfect 10 to make money from day one, and which has alsooperate at a profit. contributed substantially to the losses of Playboy and the bankruptcy of Penthouse. Such widespread thievery is also dramatically hurting the motion picture studios, as the most valuable portions of their films, the nude clips, are being unlawfully distributed by Stolen Content Websites for tens of millions of dollars in profits.

25. Despite considerable legal success against Stolen Content Websites, Perfect 10 has concluded that the only way to stop the proliferation of such websites is to go to the top, namely the payment card associations and the primary third-party processor, each of which is knowingly and effectively acting as fences for the sale of billions of dollars of stolen content.

26.40. Defendants have failed and refused to apply other rules and regulations to Stolen Content Websites, thereby continuing to profit from each illegal transaction in which they participate. For example, Defendants have allowed certain

Stolen Content Websites to incur extraordinarily high chargeback rates because of the high volume from theirillegal conduct, and the resulting high fees accruing to Defendants. 27. At the same time, defendantsDefendants have imposed arbitrarily low chargeback limits on legitimate web content providers, including Perfect 10, because such providers, lacking the increased revenues that result from the Stolen Content Websites' unfair and illegal conduct, are far less profitable for defendants than theto Defendants than the Stolen Content Websites.

28. Aiding and abetting the Stolen Content Websites' unfair competition with plaintiff, in or about Spring 2001, defendants arbitrarily terminated plaintiff's merchant account with FDC, allegedly for high chargeback rates, after levying fines on plaintiff of $100 per chargeback, and also kept plaintiff's money. In fact, Defendants knew that plaintiff had been a victim of hackers who were subsequently investigated by the Secret Service. Nevertheless, and in spite of the fact that plaintiff subsequently ran a chargeback ratio of around ½ of 1% from that point forward, well within Mastercard and Visa limits, Defendants nevertheless maintained plaintiff on the industry wide "black list". Plaintiff has not been able to process Visa cards directly as a result and has incurred significantly higher costs by its inability to have its own merchant account.

**THE PARTIES**

**Plaintiff Perfect 10**

29.41. Plaintiff is, and at all times mentioned herein was, a California corporation having its principal place of business in Beverly Hills, California. Plaintiff owns and operates the website located at perfect10.com and publishes Perfect 10 Magazine.

**The Defendants**

30.42. Perfect 10 is informed and believes, and on that basis alleges, that defendant Visa is and at all times material herein has been a joint venture association with offices at 123 Mission Street, 20th Floor, San Francisco, CA 94105 and

conducts substantial business in California, including within the County of San Francisco. Plaintiff alleges that Visa is also an association of members, primarily banks, that issue payment cards, acquire merchants who accept payment cards, or both.

~~31.~~43. Perfect 10 is informed and believes, and on that basis alleges, that defendant MasterCard is and at all times material herein has been a joint venture association with offices at 2000 Purchase Street, Purchase, NY 10577, and conducts substantial business in California, including within the County of San Francisco. Plaintiff alleges that MasterCard is an association of members, primarily banks, that issue payment cards, acquire merchants who accepts payment cards, or both.

~~32.~~44. Perfect 10 is informed and believes, and on that basis alleges, that defendant FDC is a corporation with offices at 6200 South Quebec Street, Greenwood Village, Colorado 80111, and conducts substantial business in California, including within the County of San Francisco. Plaintiff alleges on information and belief that FDC is an Independent Service Organization authorized to act by and subject to MasterCard and Visa Rules, engaged in the business of processing payment card transactions and data for Stolen Content Websites. Plaintiff is further informed and believes that FDC is the managing agent of MasterCard, Visa, and a number of their members banks.

~~33.~~45. Perfect 10 is informed and believes, and on that basis alleges, that defendant CSI is and at all times material herein has been a wholly owned subsidiary of FDC, located in Moorpark, California, and CSI conducts business within the County of San Francisco.

~~34.~~46. Perfect 10 is informed and believes and based thereon alleges that Humboldt is and at all times material herein has been a national banking association organized and existing under the laws of the United States with its principal place of business in Eureka, California.

~~35.~~47. Perfect 10 is informed and believes, and based thereon alleges that, at all times material herein, CSI was the alter ego of FDC, and that there exists and has existed at all times material herein a unity of interest and ownership between them, such that any separateness between them has ceased to exist, and that CSI is a mere shell, instrumentality and conduit through which FDC has at all times material herein carried out its business, exercising complete control and dominance over CSI such that any individuality or separateness of CSI from FDC has ceased to exist.

~~36.~~48. Adherence to the fiction of the separate existence of CSI as an entity distinct from FDC would permit an abuse of the corporate privilege and would sanction fraud and promote injustice.

~~37.~~49. Does 1 through 100, inclusive, are sued herein under fictitious names. Their true names and capacities are unknown to plaintiff. When plaintiff ascertains the Doe defendants' true names and capacities, plaintiff will amend this complaint by inserting their true names and capacities herein. Plaintiff is informed and believes and based thereon alleges that each defendant named herein as a Doe acted with defendants and is responsible for the damages to plaintiff herein alleged. Each reference in this complaint to defendants, or to any of them, also refers to all defendants sued under fictitious names.

~~38.~~50. Plaintiff is informed and believes and based thereon alleges that at all times material herein each of the defendants was the agent and employee of the other defendants, and in doing the things hereinafter alleged, was acting within the course and scope of such agency and employment.

## ALLEGATIONS COMMON TO ALL CLAIMS

**~~The Business of Perfect 10~~ A. Perfect 10's Business**

~~39.~~51. Perfect 10 is the publisher of the well-known adult entertainment magazine PERFECT 10. PERFECT 10 Magazine has a circulation of over 65,000 copies per issue. Perfect 10 also owns the Internet website of the same name. The Perfect 10 website receives approximately 100,000 unique visitors per month.

~~40.~~52. Perfect 10's business consists of the design, layout, filming, production, marketing, and promotion of adult entertainment products, including photographs, magazines, video productions, and other arts. Some of these copyrighted works appear within PERFECT 10 magazine and Perfect 10's website.

~~41.~~53. Perfect 10 has invested, and continues to invest, substantial sums of money, as well as time, effort, and creative talent, to produce its copyrighted works. In order to produce such works, Perfect 10 must make numerous payments including model fees, photographer fees, location costs, styling costs, make up costs, printing costs, film and processing costs, travel costs, as well as public relations, legal, and advertising costs. Perfect 10 is compensated for its creative efforts and monetary investments largely from subscription fees to its website, sales of and subscriptions to its magazine, and advertising revenue.

~~42.~~54. Perfect 10 is the owner of the valuable and well-known Perfect 10 family of trademarks. These marks are used by Perfect 10 in connection with the sale of its products, including PERFECT 10 magazine. Perfect 10 has spent millions of dollars advertising and promoting the PERFECT 10 mark and Perfect 10 products and services and has sold millions of dollars of products and services under the PERFECT 10 mark. Perfect 10 has built up and now owns valuable goodwill symbolized by the PERFECT 10 trademark.

~~43.~~55. Goods and services bearing the Perfect 10 trademarks have been featured on many television and radio shows (including the Tonight Show, Howard Stern Show, The Sopranos, Dawson's Creek, Battledome, Fox News, Hard Copy, Entertainment Tonight, Extra, The Dating Game, Temptation Island, Monday Night Football, Hanity and Combs, The O'Reilly Factor, The View, and Jenny Jones), in movies (American Pie, Hollow Man, and The Way of the Gun), as well as in many newspapers.

~~44.~~56. Perfect 10 regularly employs models and hires photographers in connection with the creation of its photographic works. As a regular part of Perfect

10's business, it secures assignments from its models of their rights of publicity in connection with these photographic works. Moreover, as a regular part of its business, Perfect 10 hires photographers who perform work for hire.

~~45.~~57. The Perfect 10 website is a subscription site. Consumers are given access to content on the website in exchange for the payment of a membership fee.

**~~The Business of Defendants~~ B. Defendants' Business**

~~46.~~58. Upon information and belief, Perfect 10 alleges that Defendants operate their businesses in the following manner: MasterCard and Visa are structured as open, joint venture associations with members (primarily banks) that issue payment cards, acquire merchants who accept payments, or both. Visa members have the right to issue Visa cards and to acquire Visa transactions from merchants that accept Visa cards. In exchange, they must follow Visa's by-laws and operation regulations. The same is true of MasterCard.

~~47.~~59. As an ISO, FDC ~~provides critical processing for~~materially contributes to transactions involving hundreds if not thousands of websites, including Stolen Content Websites ~~on behalf~~, by processing individual MasterCard and Visa charges on behalf of MasterCard, Visa, and a number of their member banks. When a merchant accepts a credit card from a customer for the provision of goods or services, ~~such as~~ including stolen content, the customer executes a sales draft which the merchant electronically presents ~~the card transaction data~~ to an acquirer such as FDC. FDC ~~then presents the transaction data to the association (e.g.~~submits the transaction to Visa or MasterCard, and Visa ~~MasterCard or Visa), which in turn contacts the issuer of the card to check the cardholder's credit line. The issuer then indicates to the association that it authorizes or denies the transaction; the association relays the message to FDC, who then relays the message to the credit card terminal at the merchant's point of sale.~~

~~48. If the transaction is authorized, the merchant will thereafter submit a request for payment to FDC, which relays the request, via MasterCard or Visa, to the issuer of~~

~~the card. The issuer of the card then pays FDC. FDC in turn then pays the merchant, but retains a percentage of the transaction as a fee for its services. FDC then proceeds to remit a portion of its fee to the issuing bank.~~or MasterCard verify the validity of the customer’s card and available credit. Visa or MasterCard then authorizes or denies the transaction, on a transaction by transaction basis.

60. If Visa or MasterCard authorize a transaction, the merchant immediately transmits the sales draft to FDC, which immediately purchases the draft at a discount.

~~49.~~61. The websites for which FDC and other acquirer banks process transactions~~,~~ are required by MasterCard and Visa to adhere to certain “Terms and Conditions” established by MasterCard and Visa which ~~do not allow~~ ostensibly prohibit illegal content or illegal conduct.

~~50.~~62. FDC exercises substantial supervision and control over the Stolen Content Websites for which ~~they process~~ it processes transactions. In fact, ~~such control is required by~~ MasterCard and Visa~~.~~ require such supervision and control. MasterCard and Visa rules prohibit the processing of transactions that violate federal, state, and local laws. ~~See~~Examples of such rules are attached hereto as Exhibit ~~2.~~ “3” and incorporated herein by reference. On information and belief, FDC regularly reviews websites for which it processes, ostensibly to assure that they comply with Visa and MasterCard regulations. Plaintiff is informed and believes and based thereon alleges that Visa and MasterCard have rules requiring members and processors to exercise similar close supervision of all merchants.

~~51.~~63. Despite supposedly conducting such reviews,~~which clearly would enable FDC to be in a position where they could police the unlawful conduct, attached hereto as Exhibit 3 are illustrative webpages from websites that FDC, MasterCard, and Visa~~Defendants continue to support and profit from websites which show obviously ~~clearly~~ infringing content and/or openly disclaim the rights to their content. ~~All of these are websites about which~~As more fully set forth in

paragraph 29, above, Perfect 10 has provided Defendants with notice of unlawful activity. many Stolen Content Websites..

C. **Defendants' Wrongful Conduct**

52.64. Perfect 10 alleges upon information and belief that each of the Defendants, individually and in concert with others, is providing critical support to Stolen Content Websites engaged in the infringement of the copyrights, trademarks, and publicity rights of Perfect 10 as well as the publicity rights of numerous third-party film owners, publishers, models, and celebrities., Plaintiff further alleges uponas follows:.

**1. Specific Wrongful Conduct By Defendant FDC**

65. Stolen Content Websites for which FDC processes transactions display images that violate Perfect 10's copyrights, trademarks, and assigned rights of publicity, and similar intellectual property rights of third parties. Exhibit "4," hereto is a list of some of the Stolen Content Websites. When a credit card holder uses his or her card to buy a membership to a Stolen Content Website, which purchase is facilitated by FDC, the credit card holder can view, download, and copy these infringing images.

66. Plaintiff alleges upon information and belief that virtually all celebrity content invoking the names and/or images of bona fide celebrities on the Stolen Content Websites which Defendants support is misappropriated, including, more specifically, as follows:

53.67. All or virtually all use of the names and images of bona fide celebrities on the Stolen Content Websites is unauthorized, infringing the rights of publicity of the celebrities, whose names and images are invoked.

54.68. Most of the infringements of Perfect 10 copyrights and rights of publicity occur on the celebrity websites.

55.69. Each of the Defendants is liable for conduct of the other Defendants and the Stolen Content Websites as follows:

a. Liability of Defendant FDC: FDC is contributorily liable for the wrongful conduct of the Stolen Content Websites, because it induces, causes or materially contributes to the infringing conduct, with knowledge of the infringing activity. FDC is also vicariously liable for the infringing conduct because it has the right, duty and ability to supervise the activities of the Stolen Content Websites and a direct financial interest in the infringing activity. Plaintiff is informed and believes, and on that basis alleges, that FDC has conspired with MasterCard and Visa and the operators of the Stolen Content Websites for which FDC processes transactions to continue to process payment card transactions and data for the Stolen Content Websites as alleged in this complaint, in order to continue to receive the substantial revenues that the websites' illegal and anti-competitive business practices produce.

b. Liability of Defendants MasterCard and Visa: By knowingly allowing and facilitating FDC and others to provide critical credit card processing for stolen content in violation of association rules and regulations, and by transmitting transaction data to facilitate payment to the Stolen Content Websites, MasterCard and Visa are contributorily liable for the dispersion of the illegal materials on Stolen Content Websites, as they induce, cause or materially contribute to the infringing conduct, with knowledge of the infringing activity. MasterCard and Visa are also vicariously liable for the infringing conduct because they have the right and ability to supervise the activities of these parties and a direct financial interest in the infringing activity. Plaintiff is informed and believes, and on that basis alleges, that MasterCard and Visa have conspired with FDC, other acquirer banks, and the operators of the Stolen Content Websites for which acquirer banks processes transactions to engage in the wrongful conduct of such Stolen Content Websites as alleged in this complaint.

**1. Specific Wrongful Conduct By Defendant FDC**

56. Stolen Content Websites for which FDC processes transactions display images that violate Perfect 10's copyrights, trademarks, and assigned rights of

~~publicity. See, e.g., Exhibit 4, which is a list of some of the Stolen Content Websites. Once the user buys a membership to a Stolen Content Website, which purchase is facilitated by FDC, the user may view, download, and copy these infringing images. Copies of infringing images that appear on the websites listed in this Exhibit and other websites are too numerous to attach as exhibits, but may be examined or photocopied at the offices of Plaintiff's attorneys.~~

~~57.~~70. Plaintiff alleges upon information and belief that, in addition to the websites identified in ~~the foregoing Exhibit,~~Exhibit "4", many other websites for which FDC processes transactions infringe Plaintiff's copyrights, trademarks, and rights of publicity~~.~~, with Defendants' knowing participation.

~~58.~~71. Stolen Content Websites for which FDC processes transactions contain content that infringes in other ways the rights of Perfect 10 and third parties to this action, including by the unauthorized display of images of celebrities. Such conduct constitutes unfair competition against Perfect 10.~~ The websites listed on Exhibit 4 attached hereto are illustrative, and upon information and belief, many of those are processed through FDC. The user may view, download, and copy these infringing images. Copies of infringing images that appear on the websites listed on this Exhibit are too numerous to attach as exhibits, but may be examined or photocopied at the offices of Plaintiff's attorneys.~~

~~59.~~72. Plaintiff alleges upon information and belief that, in addition to the websites identified on Exhibit ~~4,~~"4," other websites for which FDC processes transactions violate third party rights of publicity, and thereby compete unfairly with Perfect 10.

~~60.~~73. Defendants are profiting from and providing critical support for Stolen Content Websites which, aside from stealing massive quantities of celebrity images, commit various forms of unfair competition. Defendants are providing critical support to websites which:

a. ~~deceive~~Deceive consumers by making false claims about their ~~content. Just~~content such ~~by way of example, Exhibit 1 contains false claims such~~ as "Christina Aguilera Masturbating." ~~Masturbating," "Sandra Bullock Fucking," "Britney Spears Sucks Cock – we have proof on video," "Raunchy Stolen Fuck Pics – See The Hottest Female Tennis Player Get Both Holes Penetrated At Once!", "J-Lo fucking like a slut," "Lopez takes it up her big beautiful ass!"~~

~~b. falsely claim that they are "free."~~

~~c. grossly~~

b. Grossly misstate the number of images they contain. For example, in one case, a website claimed that it had 90,000 images when it had less than 3,000.

~~d. have~~

c. Have multiple "fronts" leading to the same content.

~~e. provide~~

d. Provide memberships to consumers who don't want them, for example, by requiring consumers to affirmatively uncheck a small box, lest they are unwittingly billed for memberships they did not want in the first place.

~~f. send~~

e. Send large amounts of spam.

~~(See, e.g., Exhibit 1).~~

~~61.~~74. Plaintiff alleges upon information and belief that FDC ~~is well aware of the wrongful conduct alleged above.~~has knowledge of the Stolen Websites' illegal transactions before, when and after they occur. Among other things, Plaintiff and others have notified Defendants of this wrongful conduct but Defendants have continued to provide critical support for, and benefit from, such conduct.

~~62.~~75. Starting in January of 2003, Perfect 10 wrote to Martin Elliot of Visa, Noah Hanft of MasterCard, Adam Herbert of FDC, and a variety of attorneys for those organizations putting them on notice of more than 240 specifically identified Celebrity Porn Websites with obvious stolen content that they were supporting. ~~In its January 8, 2003 letter [Exhibit 5], Perfect 10 noted that, "Most celebrity websites induce consumers to join the site based on fraudulent representations regarding the content on the site. Promotions on the home pages of such websites, in search engine results, and on banners, falsely promise, for example, such offensive content as the following: "Britney and Christina, their first time oral sex" (from the TrueCelebs.com website [Exhibit 1]); "Alicia Silverstone pussy video shot" (from the celebwood.com website [Exhibit 1]); "Barbara Streisand Porno!" (from the celebmovie.com website [Exhibit 1]); "Elle McPherson and babysitter filmed fucking and masturbating"(from the Call-girls.net website [Exhibit 1]); "See the hottest female tennis player get both holes penetrated at once!" (from the Celebrityorgy.com website [Exhibit 1]). No such content exists."~~

~~63.~~76. Perfect 10 also noted in its January 8, 2003 letter that many of the celebrity porn sites with obviously stolen content had obviously phony Internet registrations and in many cases defrauded consumers by having different homepages and titles leading to the same content. Exhibit "4" includes a copy of that letter.

~~64.~~77. Declarations from celebrities, stating that they have not authorized the use of their name, likeness, or identity on pornographic websites and that they do not want their images and names so used, have also been sent to Defendants. Such declarations, from celebrities such as Britney Spears, Christina Aguilera, Anna Kournikova, Yasmine Bleeth, and others, many of which have been sent to Defendants, are attached hereto as Exhibit ~~6.~~"5".

~~65.~~78. MasterCard and Visa also received a letter from attorneys representing Britney Spears, on March 5, 2003, ~~complaining about paysites~~ notifying them of Stolen Content Websites which defame their client ~~which~~ and are supported by

MasterCard and ~~Visa, such as call-girls.net, Babylon-x.com, and scoopy.net, and other websites like truecelebs.com, secretceleb.com, rogerceleb.com, which defame their client by working with sites that promise nude images of Britney Spears and which also contain obviously misappropriated content. A copy of that letter is attached as Exhibit 7. Nevertheless, those sites are continuing to be supported by defendants in this action.~~ Visa. A copy of that letter is attached hereto as Exhibit "6" and incorporated herein by reference.

~~66.~~79. Even without notice from Perfect 10 and attorneys for Britney Spears~~,~~ ~~defendants~~ and attorneys for other celebrities, Defendants knew or should have known about the unlawful activity on the Stolen Content Websites they supported for a number of reasons: (i) many of the websites contained the word "illegal," "celeb," "scan," or "fake" in their URL, suggesting that the website had unlawful material or had unlawfully scanned its images; (ii) many of the websites have disclaimers indicating that they did not own the rights to their content; (iii) most of the websites have obviously unauthorized material on their homepages, such as promises of "beaver shots" of various celebrities, "Britney and Christina – their first time oral ~~sex," "Elle McPherson and babysitter filmed fucking and masturbating," and various other similarly outrageous offerings; and~~ sex;" and (iv) many of the websites had obviously phony domain name registrations such as BELIZE CITY, BZ BZ BZ; Box 821 The Valley AI; or BUDA, 1112-H HU.

~~67.~~80. Plaintiff alleges upon information and belief that the conduct on the Stolen Content Websites for which FDC sells access is calculated to mislead consumers in the following ways:

a. Consumers are likely to be misled to believe that Perfect 10 and others, including celebrities, endorse or authorize the use of their names, likenesses or content on the Stolen Content Websites.

b. Stolen Content Websites routinely falsely claim to have images of popular celebrities in nude poses or performing sexual acts when in fact the websites do not contain such content.

c. Some consumers are likely to believe that "fake" or counterfeit images of popular celebrities on Content Websites are true images of those celebrities.

d. Many Stolen Content Websites are designed to appear as multiple websites with separate content, when in fact the webpages are all part of a single website, or contain the same content, fraudulently inducing consumers to purchase multiple memberships rather than a single membership.

~~68.~~81. Perfect 10 has never authorized ~~Defendants, nor~~Defendants or the Stolen Content Websites for which Defendants and other acquirer banks process transactions~~,~~ to use Perfect 10's copyrighted photographs or trademarks, or to invoke its rights of publicity. Perfect 10 further alleges upon information and belief that no celebrity (known outside the "porn" industry~~)~~ has authorized ~~Defendants, nor~~ Defendants or the Stolen Content Websites for which Defendants processes transactions, to use his or her photograph or name or to invoke his or her right of publicity. Upon information and belief, Defendants know or should know that such use of celebrity images and identities is not authorized.

~~69.~~82. Plaintiff alleges upon information and belief that Defendants have contributory, vicarious and/or aider and abettor liability for the infringements of Perfect 10's copyrights and other wrongful conduct on the Stolen Content Websites for which Defendants processes transactions.

**2. Specific Wrongful Conduct By Defendants MasterCard and Visa**

~~70. The Stolen Content Websites which receive critical support from FDC and other acquirer banks, and which display images that violate Perfect 10's copyrights,~~

~~trademarks, and assigned rights of publicity, are in turn regulated by MasterCard and Visa, as more fully set forth above.~~

~~71.~~83. Plaintiff is informed and believes ~~that~~ and based thereon alleges that MasterCard and Visa regulations require the associations to review the content of websites that accept MasterCard and Visa credit cards as a form of payment. Despite ~~the existence of~~ such regulations, both MasterCard and Visa have, despite extensive notice from Perfect 10 regarding the unlawful activities in which the Stolen Content Websites have been engaged, repeatedly failed to enforce these regulations, and as a result, have permitted this unlawful activity to continue unabated.~~Plaintiff is also informed and believes that Visa "sponsors" merchants, reviews and approves their websites, and requires a $750 fee to do that. Without Visa sponsorship, merchants cannot process VISA cards.~~ Upon information and belief, Perfect 10 further alleges that MasterCard and Visa have allowed some of the largest and most successful Stolen Content Webmasters to run chargeback rates far in excess of those allowed by their rules and regulations, such as, for example, 6% and higher, when the purported established Visa/MasterCard limit is not more than 1%

~~72.~~84. Simultaneously, while turning a blind eye to what is occurring on Stolen Content Websites accepting MasterCard and Visa as forms of payments, Visa and FDC have ironically—and unfairly—made it impossible for Perfect 10 to accept Visa as a form of payment on a new website, by arbitrarily terminating Perfect 10's merchant account in 2001 and wrongfully placing Perfect 10 and its president on the black list.

**FIRST CLAIM FOR RELIEF**

(Copyright Infringement, Vicarious Liability, and Contributory Infringement Against All Defendants -- 17 U.S.C. §§ 501 et seq.)

~~73.~~85. Perfect 10 realleges and incorporates herein by reference each and every allegation of paragraphs 1 through ~~72~~84 above as though fully set forth at length.

74. 86. At all times relevant hereto, Perfect 10 has been the owner of all right, title, and interest to each of the copyrights in suit, or has been assigned the copyrights and all claims for infringement of those copyrights. Perfect 10 (or its predecessor in interest) has registered the copyrights for its magazines, calendars, website, and photographs, each of which contain individually copyrighted works that Defendants have unlawfully reproduced, copied, prepared derivative works from, distributed, and publicly displayed. Perfect 10's United States copyright registrations are as follows:

Copyright Registration No. Title of Work

TX 4-556-514 Perfect 10 Magazine (Vol. 1; Number 1)
TX 4-556-511 Perfect 10 Magazine (Vol. 1; Number 2)
TX 4-556-482 Perfect 10 Magazine (Vol. 1; Number 3)
TX 4-556-510 Perfect 10 Magazine (Vol. 1; Number 4)
TX 4-556-475 Perfect 10 Magazine (Vol. 1; Number 5)
TX 4-556-541 Perfect 10 Magazine (Vol. 1; Number 6)
TX 4-812-575 Perfect 10 Magazine (Vol. 2; Number 1)
TX 4-813-355 Perfect 10 Magazine (Vol. 2; Number 2)

[PAGE BREAK]

~~Copyright Registration No.~~ ~~Title of Work~~

~~TX 4-812-793 Perfect 10 Magazine (Vol. 2; Number 3)~~

~~TX 4-813-026 Perfect 10 Magazine (Vol. 2; Number 4)~~

~~TX 4-812-972 Perfect 10 Magazine (Vol. 2; Number 5)~~

~~TX 4-813-344 Perfect 10 Magazine (Vol. 2; Number 6)~~

~~TX 4-813-338 Perfect 10 Magazine (Vol. 3; Number 1)~~

~~TX 4-813-390 Perfect 10 Magazine (Vol. 3; Number 2)~~

~~TX 5-172-229 Perfect 10 Magazine (Vol. 3; Number 3)~~

~~TX 5-201-630 Perfect 10 Magazine (Vol. 3; Number 4)~~

~~TX 5-217-598 Perfect 10 Magazine (Vol. 3; Number 5)~~

~~TX 5-328-427 Perfect 10 Magazine (Vol. 3; Number 6)~~

~~TX 5-328-528 Perfect 10 Magazine (Vol. 4; Number 1)~~

~~TX 5-328-636 Perfect 10 Magazine (Vol. 4; Number 2)~~

~~TX 5-488-941 Perfect 10 Magazine (Vol. 4; Number 3)~~

~~TX 5-488-942 Perfect 10 Magazine (Vol. 4; Number 4)~~

~~TX 5-451-806 Perfect 10 Magazine (Vol. 4; Number 5)~~

~~TX 5-452-020 Perfect 10 Magazine (Vol. 4; Number 6)~~

~~TX 5-452-132 Perfect 10 Magazine (Vol. 5; Number 1)~~

~~TX 5-452-254 Perfect 10 Magazine (Vol. 5; Number 2)~~

~~TX 5-452-489 Perfect 10 Magazine (Vol. 5; Number 3)~~

~~TX 5-802-012 Perfect 10 Magazine (Vol. 5; Number 4)~~

~~Pending Perfect 10 Magazine (Vol. 5; Number 5)~~

~~Pending Perfect 10 Magazine (Vol. 5; Number 6)~~

~~PA 776-173 Perfect 10 Model of the Year Video (G-Rated)~~

~~PA 955-019 Perfect 10 Model of the Year Video (R-Rated)~~

~~VA 987-612 Perfect 10 2000 Calendar~~

| Copyright Registration No. | Title of Work |
|---|---|
| VA 1-026-167 | Perfect 10 2001 Calendar |
| VA 996-673 | Perfect 10 Website (Perfect10.com) |
| VA 1-085-670 | Perfect 10 Website (Perfect10.com) |
| VA 1-177-241 | Perfect 10 Website (Perfect10.com) |
| VA 1-201-270 | Adele Stephens, Asia Carrera, and Nikki Nova Photos Published in 1996 |
| VA 1-201-269 | Jenna Jameson Photos Published in 1994 |
| VA 1-201-268 | Adele Stephens and Veronika Zemanova Photos Published in 1998 |
| VA 1-202-770 | Veronika Zemanova Poolside Photo Published in 2000 |
| VA 1-202-771 | Veronika Zemanova Poolside Photos Published in 1999 |
| VA 1-208-295 | Amy Weber Photos 1998 |
| VA 1-208-275 | Amy Weber Photos 1998 Volume 2 |
| VA 1-208-244 | Amy Weber Photos 1999 |
| VA 1-221-373 | Amy Weber Photos 1997 |
| Pending | Amy Weber Photos 1998 Volume 3 |
| Pending | Perfect 10 Behind the Scenes, Volume 1 |
| Pending | Perfect 10 Behind the Scenes, Volume 2 |

| Date of Recordation | Volume | Page | Description |
|---|---|---|---|
| June 12, 2003 | 3498 | 888 | Certificate of Recordation of Agreement for Assignment of Rights to Perfect 10, Inc. for the following Copyright Registrations. |

| Copyright Registration No. | Photo Number on Continuation Sheet | Title of Work |
|---|---|---|
| VAU 514-094 | 2111B, 2134A, 2134B, 2150, 2151B, 2160, 2168, 2177 | March 2001 JSH Photo Registration |
| VAU 353-469 | 1874, 1880, 1883, 1884A, 1884B, 1889A, 1889B, 1890, 1891, 1892, 1894B, 1899, 1984A | March 1999 JSH Photo Registration |
| VAU 353-504 | 1906, 1907A, 1907B, 1941, 1942, 1943, 1945, 1954 | August 1999 JSH Photo Registration |
| VAU 514- | 122 D24, 2214, 2223, 2240, 2242, 2264A, 2282, 2288, | September 2001 JSH Photo Registration |
| VAU 353-511 | 1980, 2004, 2010, 2028, 2031A, 2031B, 2032A, 2032B, 2037 | February 3, 2000 JSH Photo Registration |
| VAU 323-589 | 2053, 2054, 2058, 2079, 2086, 2087, 2093A, 2093B, 2102, 2105, 2119, | September 2000 JSH Photo Registration |
| VAU 537-932 | 2412, 2435, 2439, 2451A, 2451B, 2452, | July 2002 JSH Photo Registration |
| VAU 537-946 | D35, D36, 2311, 2345, 2348, 2366 | June 2002 JSH Photo Registration |
| VAU 353-439 | 1867, 1873 | February 1999 JSH Photo Registration |
| VAU 353-448 | 1834 | February 1999 J. Stephen Hicks Photo Registration |
| | | Assignment of Copyright from Roman Salicki |
| | | Assignment of Rights from J. Stephen Hicks Photography, Inc. |

~~75.~~87. Attached hereto as Exhibit ~~8~~"7" are copies of Perfect 10's copyright registrations.

~~76.~~88. Perfect 10's copyrighted photographs are contained in PERFECT 10 magazine and Perfect 10 calendars, which will be made available to Defendants' attorneys at the offices of Perfect 10's attorneys, and in Perfect 10's website, which can be accessed at perfect10.com.

~~77.~~89. Each of Perfect 10's copyrighted works consists of material wholly original with Perfect 10, and each is copyrightable subject matter under the laws of the United States.

~~78.~~90. Plaintiff is informed and believes, and on that basis alleges, that Defendants have knowingly induced, caused, encouraged, and assisted others to infringe, and/or materially contributed to the infringement by others of Perfect 10's copyrights, including by the reproduction, alteration, public display and distribution of the copyrighted works on the Stolen Content Websites, as set forth above.

~~79.~~91. Plaintiff alleges upon information and belief that Defendants knew, based on explicit notice and on the open and obvious infringing nature of the content, that photographs on the Stolen Content Websites were infringing and had reason to know that other photographs on the websites were infringing. Indeed, some of these photographs, as they appeared on these websites, contain a Perfect 10 copyright notice and/or a caption that states "Perfect 10" or a variation thereof. In addition, many of these websites specifically admit that the websites do not own their content.

~~80.~~92. Through the conduct averred herein, Defendants have engaged and continue to engage in the business of knowingly and systematically inducing, causing, and materially contributing to the above-described unauthorized reproduction, public display and distribution of, and creation of derivative works from, Perfect 10's copyrighted works, including by supporting the infringing activity on the Stolen Content Websites, as set forth above. Defendants have contributory

liability for the infringement of Perfect 10's copyrights, as set forth above.

~~81.~~93. At all times relevant herein, the Defendants had the right and ability to supervise and/or to control the infringing content that exists on the Stolen Content Websites by refusing to process credit cards for such websites and/or simply enforcing their own rules and regulations. Defendants derived substantial financial benefit from infringement of Perfect 10's copyrights, in that, among other things, the availability of approximately 20,000 Perfect 10 images on the Stolen Content Websites acted as a draw for members who pay subscription fees, a portion of which fees are ultimately earned by Defendants. The Defendants have vicarious liability for the infringement of Perfect 10's copyrights, as set forth above.

~~82.~~94. Defendants' acts alleged herein were performed without authorization by Perfect 10.

~~83.~~95. The infringement of each of Perfect 10's rights in and to each Perfect 10 copyrighted photograph constitutes a separate and distinct act of infringement of a separate and distinct copyrighted work.

~~84.~~96. The foregoing acts of infringement by Defendants have been willful, intentional and purposeful, in disregard of and with indifference to the rights of Perfect 10.

~~85.~~97. Defendants' conduct constitutes contributory and/or vicarious infringement of Perfect 10's copyrights, and Perfect 10's exclusive rights under copyright, in violation of Sections 106 and 501 of the Copyright Act, 17 U.S.C. §§ 106, 501.

~~86.~~98. As a direct and proximate result of the foregoing, Perfect 10 has suffered substantial damages to its business in the form of diversion of trade, loss of profits, injury to goodwill and reputation, and a dilution of the value of its exclusive rights in an amount to be established at trial. Perfect 10 is entitled to its actual damages and Defendants' profits attributable to the infringement pursuant to 17 U.S.C. § 504(b).

~~87.~~99. Alternatively, Perfect 10 is entitled to the maximum statutory damages, pursuant to 17 U.S.C. § 504(c), in the amount of $150,000 for each work infringed by each website or such other amounts as may be proper under 17 U.S.C. § 504(c).

~~88.~~100. Perfect 10 is entitled to its attorneys' fees and full costs pursuant to 17 U.S.C. § 505.

~~89.~~101. Defendants' conduct is causing and, unless enjoined and restrained by this Court, will continue to cause Perfect 10 great and irreparable injury that cannot fully be compensated or measured in money. Perfect 10 has no adequate remedy at law. Pursuant to 17 U.S.C. § 502, Perfect 10 is entitled to preliminary and permanent injunctive relief prohibiting further infringement of Perfect 10's copyrights.

**SECOND CLAIM FOR RELIEF**

(Trademark Infringement, Vicarious Liability, and
Contributory Infringement Against All Defendants)

~~90.~~102. Perfect 10 realleges and incorporates herein by reference each and every allegation of paragraphs 1 through ~~89~~102 above as though fully set forth at length.

~~91.~~103. Perfect 10 is the owner of the registered trademark/service mark PERFECT 10 and PERFECT10.COM. The United States trademark/service mark registrations for PERFECT 10 and PERFECT10.COM, Registration Nos. 2,202,643; 2,235,145; 2,709,583; and 2,573,998, are for entertainment services in the nature of adult entertainment and beauty contests provided via a global computer network; entertainment services in the nature of beauty contests; magazines featuring adult entertainment, beauty contests, pictures of female models, interviews, fiction, and articles on human relations, sports, entertainment, lifestyles, and fitness; calendars; and unmounted photographs. Perfect 10 is also the owner of trademark and service

mark registrations for the mark PERFECT 10 in various foreign countries. Attached hereto as Exhibit 9“8” are trademark registrations for Perfect 10 trademarks.

92.104. The PERFECT 10 trademark has been continually used by Perfect 10 and its predecessors in commerce since 1991 and is widely known throughout the United States and other parts of the world.

93.105. Perfect 10 has also applied for registration of the PERFECT 10 trademark for other products, and such applications have been allowed.

94.106. Perfect 10 has spent millions of dollars advertising and promoting the PERFECT 10 mark and Perfect 10 products and services, and has sold millions of dollars of products and services under the PERFECT 10 mark.

95.107. As a result of the aforementioned use, promotion, and advertisement of the PERFECT 10 trademark, Perfect 10 has built up and now owns valuable goodwill symbolized by the PERFECT 10 trademark.

96.108. As a result of the care and skill exercised by Perfect 10 over the nature and quality of goods and services sold under the registered PERFECT 10 mark and the extensive promotion, advertising, sale, and public acceptance thereof, these goods and services have acquired a fine reputation, and this trademark has become renowned as a symbol of the goodwill that Plaintiff has created throughout the United States and elsewhere by selling products and services of high quality and by fairly and honorably dealing with the trade and public in the sale of these products and services.

97.109. Photographs containing a Perfect 10 copyright notice and/or a caption “Perfect 10,” “P-10,” or similar designation have been posted on the Stolen Content Websites.

98.110. Defendants are knowingly inducing, causing, and materially contributing to the conduct of the Stolen Content Websites, as alleged above. Defendants had the right and ability to supervise and/or to control the infringing

content that exists on the Stolen Content Websites, and receive a direct financial benefit from the infringing activity, as alleged above.

~~99.~~111. Defendants are providing critical support to Stolen Content Webmasters that are using the PERFECT 10 mark in a manner that is likely to cause the public to believe that Stolen Content Websites emanate from and/or are endorsed by, affiliated with, sponsored by, and/or otherwise authorized by Perfect 10.

~~100.~~112. Defendants are liable for inducing infringement or contributory infringement of Perfect 10's trademarks, and/or are vicariously liable, by reason of the uses alleged herein. Defendants also are liable as co-conspirators for the acts of the Stolen Content Websites, as alleged above.

~~101.~~113. Defendants' actions have at all times been without Perfect 10's consent. Defendants' acts constitute willful and deliberate infringement of Perfect 10's registered trademarks/service marks in violation of trademark and unfair competition laws, including, but not limited to, Sections 32 and 43 of the Lanham Act, 15 U.S.C. §§ 1114 and 1125.

~~102.~~114. Defendants' acts complained of herein have damaged, and will damage, Perfect 10 irreparably. Perfect 10 has no adequate remedy at law for these wrongs and injuries. The damage to Perfect 10 includes harm to its goodwill and reputation in the marketplace that money cannot fully compensate. Perfect 10 is, therefore, entitled to a preliminary and permanent injunction restraining and enjoining Defendants and their agents, servants, and employees, and all persons acting thereunder, in concert therewith or on their behalf, from providing critical support to any Stolen Content Website using Perfect 10's PERFECT 10 mark, or any colorable imitations thereof, in connection with their websites or in the sale, offering for sale, and advertising of their goods and services, or in any manner likely to cause mistake or to deceive the public as to the source, origin, or affiliation of Defendants' goods and services.

~~103.~~115. Because Defendants have willfully supported Stolen Content Websites who have used the PERFECT 10 mark in a manner calculated to cause confusion in the sale, offering for sale, and advertising of services, Perfect 10 is entitled to recover all damages sustained as a result of Defendants' unlawful conduct, including (1) Defendants' profits, (2) Perfect 10's damages, (3) treble those amounts, (4) the costs of the suit, and (5) reasonable attorneys' fees, pursuant to 15 U.S.C. § 1117.

**THIRD CLAIM FOR RELIEF**

(Trademark Disparagement Against All Defendants -- 15 U.S.C. § 1125(a))

~~104.~~116. Perfect 10 realleges and incorporates herein by reference each and every allegation of paragraphs 1 through ~~103~~115 above as though fully set forth at length.

~~105.~~117. The acts of Defendants alleged herein create an undesirable, unwholesome, or unsavory mental association with Perfect 10 and its PERFECT 10 mark.

~~106.~~118. As a result of Defendants' wrongful acts, the public is likely to be confused or deceived into believing that the Stolen Content Websites' goods and services are affiliated with, connected with, or sponsored by Perfect 10 or with the genuine PERFECT 10 trademark.

~~107.~~119. This deception, likely confusion, and association damages Perfect 10's valuable goodwill and disparages Perfect 10's rights in the PERFECT 10 mark.

~~108.~~120. Defendants are liable for inducing or materially contributing to the conduct causing a disparagement of Perfect 10's trademarks, and/or are vicariously liable, by reason of the uses alleged above. Defendants also are liable as co-conspirators for the acts of the Stolen Content Websites, as alleged above.

~~109.~~121. As a direct and proximate result of Defendants' actions as alleged herein, Perfect 10 has been damaged in an amount presently unknown, but to be proven at time of trial. Perfect 10 is also entitled to recover Defendants' profits.

~~110.~~122. Perfect 10 has incurred costs and attorneys' fees in bringing this action.

~~111.~~123. Defendants' actions as alleged above are greatly and irreparably damaging Perfect 10 and will continue to do so unless Defendants are restrained by this Court. Plaintiff is entitled to injunctive relief.

**FOURTH CLAIM FOR RELIEF**

(Wrongful Use of a Registered Mark Against All Defendants --

Cal. Bus. & Prof. Code § 14335)

~~112.~~124. Perfect 10 realleges and incorporates herein by reference each and every allegation of paragraphs 1 through ~~72 and 90 through 111~~124 above as though fully set forth at length.

~~113.~~125. Defendants' actions in providing critical support to Stolen Content Websites who are using and reproducing the PERFECT 10 mark in connection with the sale, offering for sale, and advertising of their goods and services are likely to cause mistake and to deceive the public as to the source or origin of Stolen Content Website's services. Defendants' actions have at all times been, and continue to be, without Perfect 10's consent. Defendants' support of Stolen Content Websites constitutes unlawful infringement in violation of California Business and Professions Code § 14335.

~~114.~~126. Defendants' acts complained of herein have damaged, and will damage, Perfect 10 irreparably. Plaintiff is entitled to injunctive relief.

**FIFTH CLAIM FOR RELIEF**

(Violation of Right of Publicity Against All Defendants --

Cal. Civil Code § 3344 and common-law right of publicity)

~~115.~~127. Perfect 10 realleges and incorporates herein by reference each and every allegation of paragraphs 1 through ~~72 and 90 through 114~~126 above as though fully set forth at length.

~~116.~~128. Perfect 10 is the assignee of publicity rights in the likenesses of models and actresses appearing in PERFECT 10 magazine, on its website, in calendars, in photographs, and otherwise, which models and actresses were the subject of photographs appearing on the Stolen Content Websites. Attached hereto as Exhibit ~~10 is a listing~~"9" is a list of the identities of the models and actresses who have assigned their rights of publicity to Perfect 10, which rights have been misappropriated by Stolen Content Websites with the critical support of Defendants.

~~117.~~129. Defendants knowingly support Stolen Content Websites which violate Plaintiff's rights of publicity by appropriating likenesses belonging to Perfect 10 and by publishing the same on the Internet.

~~118.~~130. The appropriation was unauthorized and without the prior consent of Perfect 10 or any authorized party.

~~119.~~131. The Stolen Content Website's conduct involved the appropriation of the names and photographic images of Plaintiff's assignors. These assignors are readily identifiable in such photographs, and the names of certain of these assignors have been wrongfully used on the Stolen Content Websites.

~~120.~~132. The misappropriation by Stolen Content Websites was on or in products, merchandise or goods, or in advertising for them.

~~121.~~133. Defendants are liable for aiding and abetting the infringement, and/or have vicarious liability, as alleged above.

~~122.~~134. By reason of Defendants' acts, Perfect 10 has suffered substantial damage to its business in the form of diversion of trade, loss of profits, injury to goodwill and reputation, and a dilution of the value of its exclusive rights, all of which are not yet fully ascertainable. Defendants have profited from these acts.

~~123.~~135. Defendants' critical support of Stolen Content Websites that infringe Perfect 10's rights of publicity has damaged, and will damage, Perfect 10 irreparably. Perfect 10 has no adequate remedy at law for these wrongs and injuries. The damage to Perfect 10 includes harm to the goodwill, value, and reputation of the persons who have assigned their rights of publicity to Perfect 10 in a manner that money cannot compensate. Perfect 10 is, therefore, entitled to a preliminary and permanent injunction restraining and enjoining Defendants and their agents, servants, and employees, and all persons acting thereunder, in concert therewith or on their behalf, from infringing the rights of publicity that have been assigned to Perfect 10.

~~124.~~136. Plaintiff is informed and believes, and on that basis alleges, that the aforementioned acts of Defendants were willful, oppressive, fraudulent, and malicious, and Plaintiff is therefore entitled to punitive damages.

**SIXTH CLAIM FOR RELIEF**

(Unfair Competition Against All Defendants -- common law,
California Business & Professions Code §§17200 et seq.,
and Lanham Act §43(a))

~~125.~~137. Perfect 10 realleges and incorporates herein by reference each and every allegation of paragraphs 1 through ~~124~~136 above as though fully set forth at length.

~~126.~~138. Defendants are providing critical support for and profiting from the unfair competition perpetrated by Stolen Content Websites against Perfect 10 by reason of the conduct alleged herein, including the following:

~~127.~~139. Defendants have provided critical support to Stolen Content Websites that offer a vast library of misappropriated content that is used to compete directly and unfairly against Plaintiff, including, without limitation by (i) selling the misappropriated content at substantially less than the cost of selling such content legitimately and (ii) selling misappropriated content that is not lawfully available to Perfect 10 or other competitors acting lawfully. This misappropriated content

includes (but is not limited to) material that infringes upon the rights of Perfect 10 and third-party publishers, film owners, celebrities and models, including their rights of publicity and privacy and their rights not to be placed in a false light. Attached hereto as Exhibit ~~11~~"10" is a list of some of the third-party celebrities and models whose rights of publicity and/or rights of privacy (false light) have been infringed by Stolen Content Websites which receive critical support by Defendants. Given the sheer volume and changing character of the misappropriations taking place, this list is not exhaustive, but is rather an exemplar of the misappropriation that has taken place.

Defendants are providing critical support to Stolen Content Websites which deceive consumers by misrepresenting the source or sponsorship of material on their websites, by palming off the property of Perfect 10 and third parties as their own, by misrepresenting the nature, characteristics, and identity of material on the Stolen Content Websites (for example, by falsely claiming that there are nude photographs of celebrities and by using fake composite pictures), by misrepresenting the amount and scope of the material on or through the Stolen Content Websites, and/or by falsely claiming that a website is free or tricking consumers into paying for another website.

~~128.~~140. Defendants are also providing critical support to webmasters that are engaged in other clearly illegal activity such as a) selling access to unauthorized passwords, including unauthorized passwords to Perfect10.com, and other websites that Perfect 10 owns rights to, including, amyweber.net and ambersmith.net, thereby vastly reducing the demand for memberships to perfect10.com and leading to massive infringement of Perfect 10's copyrights and misappropriation of its rights of publicity (by assignment); websites that promote rape and/or incest; websites that appear to offer the illegal downloading of hundreds of millions of songs and/or movie clips; websites that appear to sell devices to steal cable signals.

~~129.~~141. The Stolen Content Websites and websites which distribute unauthorized passwords to perfect10.com and other websites, along with the misrepresentations of Stolen Content Websites which receive critical support from Defendants, are wrongfully diverting consumer traffic from Perfect 10's website and PERFECT 10 magazine. Furthermore, while allowing competitors who are engaged in various obviously illegal acts to process via MasterCard and Visa, Defendants have denied Perfect 10 the ability to process Visa cards, and terminated Perfect 10's merchant account, thus severely impacting its business.

~~130.~~142. The unlawful and unfair conduct is injuring the goodwill of Perfect 10.

~~131.~~143. Defendants are each liable for the unfair competition on the Stolen Content Websites, and/or are liable for aiding and abetting such conduct.

~~132.~~144. By this conduct, Plaintiff has directly suffered injuries and the Defendants have been unjustly enriched.

~~133.~~145. Plaintiff is entitled to restitution, the recovery of damages, and the recovery of the profits earned by Defendants by virtue of their conduct.

~~134.~~146. As a consequence of the unfair competition by Defendants, Plaintiff is suffering irreparable injury, by reason of which such conduct should be enjoined.

~~135.~~147. Plaintiff is entitled to its reasonable attorneys' fees.

~~136.~~148. Plaintiff is informed and believes, and on that basis alleges, that the aforementioned conduct of Defendants is willful, oppressive, fraudulent, and malicious, and Plaintiff is therefore entitled to punitive damages.

**SEVENTH CLAIM FOR RELIEF**

(False Advertising Against All Defendants – common law,

California Business & Professions Code §§17500 et seq.)

~~137.~~149. Perfect 10 realleges and incorporates herein by reference each and every allegation of paragraphs 1 through ~~72 and 90 through 136~~148 above as though fully set forth at length.

~~138.~~150. Defendants' critical support of Stolen Content Websites which misrepresent the nature, scope, characteristics, identity, cost, and source or sponsorship of material available on or through the Stolen Content Websites constitutes aiding and abetting liability for deceptive, untrue, and misleading advertising and therefore constitutes a violation of, inter alia, California Business and Professions Code §§17500 et seq. and California common law.

~~139.~~151. These advertisements are likely to have deceived and continue to deceive the consuming public. Defendants knew, recklessly disregarded, or reasonably should have known that such advertising was untrue and/or misleading.

~~140.~~152. As a result of the conduct described above, Defendants have been and will be unjustly enriched at the expense of Perfect 10 and the general public. The interests of the general public and Perfect 10 are, therefore, closely related. Defendants have been unjustly enriched, among other things, by the receipt of tens of millions of dollars in fees obtained by processing subscriptions to the Stolen Content Websites, both in California and throughout the world, which are promoted and sold through advertisements that affirmatively misrepresent, either directly or by implication, the nature, scope, characteristics, identity, cost, and source or sponsorship of the material on the websites.

~~141.~~153. Pursuant to Business and Professions Code §§ 17203 and 17535, Perfect 10, on behalf of itself and the general public, which is unable effectively to assert its interests, seeks an order of this Court ordering Defendants immediately to cease such support for acts of unfair competition and false advertising, and enjoining Defendants from continuing to support Stolen Content Websites which falsely advertise or conduct business via the unlawful, deceptive, unfair or fraudulent business acts and practices, and the untrue and misleading advertising complained of herein. Perfect 10 additionally requests an order disgorging Defendants' ill-gotten gains and restitution of all monies wrongfully acquired by Defendants by means of their support of such acts of unfair competition and false advertising, damages, interest and attorneys' fees.

EIGHTH CLAIM FOR RELIEF

(For Libel)

142. Perfect 10 realleges and incorporates herein by reference each and every allegation of paragraphs 1 through 72 and 90 through 141 above as though fully set forth at length.

143. Since in or about Spring 2001, defendants have kept the name of plaintiff and its president on the Black (also called “Match”) List.

144. Keeping plaintiff and its president on the Black List is libelous on its face, because it constitutes a false declaration to the entire payment card industry that plaintiff was and is guilty of imposing improper charges and/or other wrongful conduct, and that plaintiff would present a significantly higher than usual risk of loss to any financial institution that provided payment card processing services to plaintiff. The true facts which, at all times material herein, defendants have known or should have known, are that plaintiff is not guilty of any improper conduct, that providing payment card processing services to plaintiff would pose no risk of financial loss to service providers, and that there was no good faith basis to put and keep plaintiff on the Black List. The chargebacks that took place on Perfect 10’s website were caused by the illegal activities of a third party, not by Perfect 10, and Defendants knew that.

145. The Black List, including the listing of plaintiff and its president, was and is disseminated to and seen and read by multitudes of providers of payment card processing services.

146. Including plaintiff and its president on the Black List has a tendency to injure plaintiff in its occupation and business, because it prevents plaintiff from obtaining credit card charge processing services and, therefore, from accepting payment card charges as payment for services and obtaining the business of customers who are payment card holders.

147. As a proximate result of the publication alleged in the preceding

~~paragraphs, plaintiff has lost customers and revenues, and has suffered and continues to suffer damages in an amount to be proved at trial.~~

~~148. Plaintiff is informed and believes, and on that basis alleges, that the aforementioned conduct of Defendants is willful, oppressive, fraudulent, and malicious, and Plaintiff is therefore entitled to punitive damages.~~

**~~NINTH CLAIM FOR RELIEF~~**

~~(For Injunctive Relief)~~

~~149. Perfect 10 realleges and incorporates herein by reference each and every allegation of paragraphs 1 through 148 above as though fully set forth at length.~~

~~150. The wrongful conduct of defendants, unless and until enjoined and restrained by order of this Court, will cause great and irreparable injury to plaintiff, because it will prevent plaintiff from obtaining credit card processing services from any service provider; will destroy plaintiff's goodwill, business and reputation; and will prevent plaintiff from meeting its obligations to its employees, customers and shareholders.~~

~~151. Plaintiff has no adequate remedy at law for the injuries currently being suffered and threatened, because, absent injunctive relief, defendants will continue to maintain plaintiff's name on the Black List, refuse to provide credit card processing services to plaintiff on the terms and at the rate to which the parties agreed, and provide payment card services to Stolen Content Merchants~~

**~~TENTH CLAIM FOR RELIEF~~**

~~(Intentional Interference with Economic Relations)~~

~~152. Perfect 10 realleges and incorporates herein by reference each and every allegation of paragraphs 1 through 72 and 90 through 151 above as though fully set forth at length.~~

~~153. At all times material herein, defendants knew of the existence of plaintiff's economic relationships with its customers who are payment card holders and of plaintiff's potential economic relationships with member banks and ISO's~~

~~other than FDC.~~

~~154. As a direct and proximate result of defendants' wrongful placement of plaintiff on the Black List, and of defendants' participation in the business of the Stolen Content Websites, plaintiff has suffered and continues to suffer injury to its business, trade, profession, and occupation as described hereinabove, in an amount to be proven at trial but which plaintiff is informed and believes is in excess of $20 million.~~

~~155. Defendants have acted and continue to act in willful and conscious disregard of plaintiff's rights and interests with the intent to benefit themselves, while subjecting plaintiff to cruel and unjust hardship and harm, and with the intent to defraud plaintiff and deprive it of its rights, thereby entitling plaintiff to an award of punitive damages against defendants in order to punish defendants, and each of them, and to deter similar misconduct in the future.~~

**PRAYER FOR RELIEF**

WHEREFORE, plaintiff Perfect 10 prays for judgment in favor of Plaintiff and against Defendants as follows:

1. That Defendants, and any of their officers, agents, servants, employees, representatives, and attorneys, and all persons in active concert or participation with them, be preliminarily and permanently enjoined from:

a. providing merchant services for, or processing credits cards for, websites with obviously stolen content, including celebrity porn sites;

b. providing merchant services for, or processing credit cards for, websites which are clearly involved in consumer fraud;

c. contributing to or profiting from the theft of Perfect 10 images or the violation of Perfect 10's rights of publicity;

d. inducing, causing, or materially contributing to the infringement of Perfect 10's copyrights and trademarks, and the misappropriation of its rights of publicity;

e. aiding or abetting in unfair competition against Perfect 10;

f. aiding or abetting in false advertising; and

g. maintaining plaintiff's name, and that of its president, on the Black List.

2. For restitution in the amount of the benefit to Defendants by reason of their unlawful, unfair or fraudulent content.

3. An award of Perfect 10's actual damages.

4. That an accounting be made for all profits, income, receipts, or other benefits derived by Defendants.

5. Alternatively, statutory damages under the Copyright Act.

6. Treble damages under the Lanham Act.

7. That Defendants pay to Plaintiff general damages in an amount to be proven.

8. Alternatively, statutory damages under California Civil Code Section 3344.

9. For punitive damages.

10. That Plaintiff be awarded its attorneys' fees and costs.

11. That Plaintiff be awarded such other and further relief as this Court deems just and appropriate.

~~Dated: January ____, 2004~~
Dated: September 3, 2004

Howard King
Stephen D. Rothschild
KING, HOLMES, PATERNO&BERLINER

Jeffrey N. Mausner
BERMAN, MAUSNER&RESSER

Daniel J. Cooper
~~Randy Lewis~~

By:______________________________
Howard King
Attorneys for Plaintiff, PERFECT 10, INC.

**DEMAND FOR JURY TRIAL**

Plaintiff Perfect 10, Inc. hereby demands a jury trial pursuant to Rule 38(b) of the Federal Rules of Civil Procedure.

~~Dated: January ____, 2004~~
Dated: September 3, 2004

Howard King

Stephen D. Rothschild
KING, HOLMES, PATERNO&BERLINER

Jeffrey N. Mausner
BERMAN, MAUSNER&RESSER

Daniel J. Cooper
Randy Lewis

By:______________________________
Howard King
Attorneys for Plaintiff, PERFECT 10, INC.

## CERTIFICATION OF INTERESTED ENTITIES OR PERSONS PURSUANT TO LOCAL RULE 3-16

Pursuant to Civil L.R. 3-16, the undersigned certifies that the following listed persons, associations of persons, firms, partnerships, corporations (including parent corporations) or other entities (i) have a financial interest in the subject matter in controversy or in a party to the proceedings, or (ii) have a non-financial interest in that subject matter or in a party that could be substantially affected by the outcome of this proceeding:

PERFECT 10, INC. Plaintiff

VISA INTERNATIONAL SERVICE ASSOCIATION Defendants
FIRST DATA CORP
CARDSERVICE INTERNATIONAL, INC.
MASTERCARD INTERNATIONAL INCORPORATED
HUMBOLDT BANK

Dated: January ___, 2004

Howard King
Stephen D. Rothschild
KING, HOLMES, PATERNO&BERLINER

Jeffrey N. Mausner
BERMAN, MAUSNER&RESSER

Daniel J. Cooper
Randy Lewis

By:______________________________
Howard King
Attorneys for Plaintiff, PERFECT 10, INC.