**United States District Court**
For the Northern District of California

NOT FOR CITATION

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| Perfect 10, Inc., | NO. C 04-00371 JW |
| Plaintiff(s), | |
| v. | **ORDER GRANTING DEFENDANTS' MOTION TO DISMISS FIRST AMENDED COMPLAINT** |
| Visa International Service Association, et al., | |
| Defendant(s). | |

## I. INTRODUCTION

Plaintiff Perfect 10, Inc. ("Plaintiff") brings this lawsuit against Defendants Visa International Service Association ("Visa"), First Data Corp. ("FDC"), Cardservice International, Inc., MasterCard International Incorporated ("MasterCard"), and Humboldt Bank (collectively "Defendants") claiming copyright infringement, trademark infringement, violation of right of publicity, unfair competition, and false and misleading advertising. Defendants move, pursuant to FED. R. CIV. P. 12(b)(6) (Rule 12(b)(6)), to dismiss Plaintiff's First Amended Complaint (FAC). This Court conducted a hearing regarding Defendants' motion on November 15, 2004. Having considered the arguments advanced by the parties at the hearing and in their papers, this Court GRANTS Defendants' motion to dismiss with prejudice.

## II. BACKGROUND

The general facts of this case are well-known to the parties and to this Court. See (Order

Granting Defendants' Motion to Dismiss, hereinafter August 5, 2004 Order, Docket Item No. 39, at 2-3). Generally, Plaintiff provides adult entertainment services. Plaintiff, inter alia, publishes PERFECT 10 Magazine and operates the website www.perfect10.com, both of which feature photographs of nude models. Plaintiff owns the copyrights to most of the images that it displays, and it attaches its registered trademark, "Perfect 10," to many of its images. Plaintiff also owns the right of publicity for many of the models that appear in its images.

Plaintiff alleges that a number of websites routinely and illicitly publish Plaintiff's images--and thereby infringe Plaintiff's copyrights and trademarks. Plaintiff refers to these websites as "Stolen Content Websites." See (FAC, Docket Item No. 40, at 2:3-6) ("Hidden in undisclosed locations around the world, thieves from every country are operating websites ('Stolen Content Websites') that routinely offer for sale to the public stolen and moving images consisting of . . . scans from Perfect 10 Magazine and images from its website perfect10.com"). Plaintiff, however, is not suing the Stolen Content Websites or their operators. Instead, Plaintiff is suing Defendants, a number of financial institutions that provide financial services to the Stolen Content Websites. See (FAC at 1:26-2:1) ("The Defendants in this case, who are among America's most prominent financial institutions, are knowingly providing crucial transactional support services for the sale of millions of stolen photos and film clips worth billions of dollars that belong to Perfect 10 . . ."). Plaintiff's theory is that Defendants, by knowingly providing financial services to the Stolen Content Websites, materially contribute to the Stolen Content Webstites' infringing activities.

### III. STANDARDS

In ruling upon a motion to dismiss, this Court must accept all allegations of material fact as true and must construe said allegations in the light most favorable to the non-moving party. Western Reserve Oil & Gas Co. v. New, 765 F.2d 1428, 1430 (9th Cir. 1985). The United States Supreme Court, in Conley v. Gibson, 355 U.S. 41 (1957), set forth the strict standard for granting a Rule 12(b)(6) motion to dismiss. A Rule 12(b)(6) motion to dismiss must not be granted "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle

him to relief." Id. at 45-46. "A claim may be dismissed as a matter of law for one of two reasons: (1) lack of a cognizable legal theory or (2) insufficient facts under a cognizable legal claim." Robertson v. Dean Witter Reynolds Co., 749 F.2d 530, 534 (9th Cir. 1984). As the Ninth Circuit has observed, "The [Rule 12(b)(6)] motion to dismiss for failure to state a claim is viewed with disfavor and is rarely granted." Gilligan v. Jamco Develop. Corp., 108 F.3d 246, 249 (9th Cir. 1997).

## IV. DISCUSSION

**A. Plaintiff's First Amended Complaint Does Not Materially Differ from Its Original Complaint**

This is Plaintiff's second attempt at pleading its case. This Court dismissed Plaintiff's original complaint in its August 5, 2004 Order, but granted it leave to amend its claims for copyright infringement, trademark infringement, violation of right of publicity, unfair competition, and false and misleading advertising. In dismissing Plaintiff's original complaint, this Court noted that the nexus between Defendants' provision of financial services to the Stolen Content Websites and the Stolen Content Websites' infringing activities, as pled by Plaintiff, was too attenuated. (August 5, 2004 Order at 5:24-25) ("Defendants are concerned solely with financial aspects of the [Stolen Content] [W]ebsites, not their content"); (August 5, 2004 Order at 6:15-17) ("[T]here is no factual basis for the allegation that [Defendants] materially contribute to the alleged *infringing activities* of the websites"); (August 5, 2004 Order at 7:25-8:2) ("Nor do Defendants have the authority to shut down the websites' servers, delete any infringing material they find, or prevent the transmission of such material"); (August 5, 2004 Order at 9:8-9) ("Plaintiff has pled no facts indicating that Defendants induced the allegedly infringing websites to use Plaintiff's marks"); (August 5, 2004 Order at 9:17-19) ("The only service Defendants supply is the ability to accept certain credit cards as payment, and this service has no apparent direct link to the alleged infringing activities"); (August 5, 2004 Order at 10:1-2) ("Plaintiff has pled no facts that indicate . . . an intimate relationship between Defendants and the [Stolen Content] [W]ebsites"); (August 5, 2004 Order at 10:22-23) ("Defendants did not participate in the alleged illegal activities, they merely provided financial services to merchants"). Accordingly, this Court exhorted Plaintiff that it "must establish a relationship between the financial services

3

provided by Defendants and the alleged infringing activity as opposed to the mere operation of the website businesses." (August 5, 2004 Order at 7:2-3.)

Plaintiff's First Amended Complaint is not drastically different from its original complaint. Its most noteworthy addition appears in the section titled "Defendants' Right and Ability to Control the Stolen Content Websites." See (FAC at 5:15-8:13.) There, Plaintiff fleshes out a number of Defendants' "rules and regulations," which allegedly govern the contractual relationship between Defendants and the Stolen Content Websites. Plaintiff contends that these "rules and regulations" give Defendants "the right and ability to supervise the [Stolen Content] Websites." (Plaintiff's Combined Opposition to Motions to Dismiss, hereinafter Plaintiff's Opposition, Docket Item No. 48, at 12:3-4.) But this averment does not materially differ from Plaintiff's averments in its original complaint:

> The Stolen Content Websites[,] which receive critical support from FDC and other[s] . . . , and which display images that violate Perfect 10's copyrights, trademarks, and assigned rights of publicity, are in turn regulated by MasterCard and Visa, as more fully set forth above. [¶] Plaintiff is informed and believes that MasterCard and Visa regulations require the associations to review the content of websites that accept MasterCard and Visa credit cards as a form of payment.

(Plaintiff's Complaint, hereinafter Complaint, Docket Item No. 1, at ¶¶ 70-71.) Thus, Plaintiff's First Amended Complaint suffers from the same infirmities as its original Complaint.

**B. Copyright Infringement**

### 1. Contributory Copyright Infringement

It its August 5, 2004 Order, this Court noted that, "To have engaged in contributory copyright infringement, it is not sufficient for the Defendants to merely have contributed to the general business of the infringer. To have materially contributed to copyright infringement, 'the . . . assistance must bear *some direct relationship to the infringing acts*.'" (August 5, 2004 Order at 4:17-20) (quoting 3-12 NIMMER ON COPYRIGHT § 12.04[A][2][a]). Plaintiffs have again failed to establish a direct relationship between Defendants' activities and the Stolen Content Websites' infringing acts.

In Fonovisa, Inc. v. Cherry Auction, Inc., 76 F.3d 259, 264 (9th Cir. 1996), the Ninth Circuit held that "providing the site and facilities for known infringing activity is sufficient to establish contributory liability." The Ninth Circuit also noted, parenthetically, that "'Merely providing the

means for infringement may be sufficient' to incur contributory liability." Id. (quoting 2 WILLIAM F. PATRY, COPYRIGHT LAW & PRACTICE 1147).  Here, Defendants provide neither the site, nor the facilities, nor the means for infringement to the Stolen Content Websites.  Defendants simply operate payment systems.

Plaintiff argues that a series of contracts, rules, and regulations between Defendants and the Stolen Content Websites permit Defendants to "control" the content of the Stolen Content Websites.  (Plaintiff's Opposition at 11:18; FAC at 5:15-8:13.)  Plaintiff, however, premises his argument upon Defendants' *economic* influence over the Stolen Content Websites.  The following excerpts from Plaintiff's Opposition are revealing:  "Defendants' *financial* support effectively eliminates the need for any physical 'site and facilities'" (Plaintiff's Opposition at 16:28-17:1) (emphasis added); "[T]he [Stolen Content Websites] could not survive *without the ability to accept credit cards* in payment of their illegal transactions" (Plaintiff's Opposition at 17:10-12) (emphasis added); and "[W]ithout defendants' *provision of a merchant account and ability to process MasterCard and Visa charges*, the vast preponderance of infringers would lose their *ability to sell* to most consumers worldwide" (Plaintiff's Opposition at 18:5-7) (emphasis added).

Plaintiff's would have this Court hold that mere economic influence over a copyright infringer constitutes contributory copyright infringement.  To so hold would set a dangerous precedent.  Under Plaintiff's logic, private, individual websurfers who patronize the Stolen Content Websites, while knowing that they infringe others' copyrights, commit contributory copyright infringement--simply by creating demand, the preeminent economic influence, for the Stolen Content Websites' goods and services.  After all, the Stolen Content Websites "could not survive without" economic demand.  (Plaintiff's Opposition at 17:10-11.)  Nay, without economic demand "the vast preponderance of [Stolen Content Websites] would lose their ability to sell to most consumers worldwide." (Plaintiff's Opposition at 18:6-7.)

In any event, the caselaw in this area holds that liability for contributory copyright infringement scarcely attaches beyond the actual provision of physical sites and physical facilities for infringing

5

activities. In Fonovisa, the Ninth Circuit held that, in the physical world, the provision of space, utilities, parking, advertising, plumbing, and customers is sufficient to constitute a material contribution to the infringing activity. Cases arising out of the cyber-world are not that different. They generally hold that a contributory copyright infringer must provide the actual vehicle of infringement. See A&M Records v. Napster, 239 F.3d 1004 (9th Cir. 2001) (finding that the provision of software, servers, and server-side software to copyright infringers constituted a "material contribution" to copyright infringement); Sega Enters. v. MAPHIA, 948 F. Supp. 923 (N.D. Cal. 1996) (finding that the operation of an electronic bulletin board system which distributed unauthorized copies of video game software constituted a "material contribution" to copyright infringement); and Metro-Goldwyn-Mayer Studios v. Grokster, Inc., 380 F.3d 1154 (9th Cir. 2004) (finding that software distributors of peer-to-peer network software, which peers used to illicitly share copyrighted material, did not "materially contribute" to copyright infringement because they did not actually store the copyrighted material). Here, Defendants simply operated payment systems. They did not store or index copyrighted images, and they did not operate the Stolen Content Websites. As such, they cannot be said to have "materially contributed" to copyright infringement.

**2. Vicarious Copyright Infringement**

Plaintiff's vicarious copyright infringement claim fails for similar reasons. In order to establish a claim for vicarious copyright infringement, Plaintiff must allege that Defendants have (1) the right and ability to control the infringing activity, and (2) a direct financial benefit from the infringing activity. Ellison v. Robertson, 337 F.3d 1072, 1078 (9th Cir. 2004). Plaintiff has not satisfied the first of these two elements.

All that Plaintiff has alleged is that Defendants could terminate their business relationships with the Stolen Content Websites. Again, Plaintiff premises its argument upon Defendants' *economic* influence over the Stolen Content Websites. "By eliminating a Stolen Content Website's ability to *sell* stolen materials *via MasterCard or Visa cards*, defendants can stop *sales* to the vast majority of the world's *consumers*." (Plaintiff's Opposition at 13:26-14:1.) Economic influence is not the type of

"control" over infringing activity which vicarious copyright infringement addresses.

"Control" means direct control over the infringing activity. In Grokster, the Ninth Circuit held that the defendants did not vicariously infringe because they did not have the ability to block access to copyrighted materials. Grokster, 380 F.3d at 1165; see also Napster, 239 F.3d at 1023 ("The ability to block infringers' access to a particular environment for any reason whatsoever is evidence of the right and ability to supervise"). As this Court noted in its August 5, 2004 Order, "Defendants [do not] have the authority to shut down the [Stolen Content Websites'] servers, delete any infringing material they find, or prevent the transmission of such material." (August 5, 2004 Order at 7:25-8:2.) This Court also noted (in the context of contributory infringement) that

> The only service Defendants provide to the [Stolen Content Websites] is the ability to process credit cards. The ability to process credit cards does not directly assist the allegedly infringing websites in copying Plaintiff's works. . . . Here, the [Stolen Content Websites] would be every bit as capable of copying and distributing Plaintiff's copyrighted works regardless of whether they employed Defendants' services.

(August 5, 2004 Order at 6:17-25.) This observation is relevant in that it illuminates Defendants' inability to directly control the infringing activity. Under the facts alleged in Plaintiff's First Amended Complaint, Defendants simply do not "control" the infringing activity at issue.

**C. Trademark Infringement**

Like its copyright infringement claims, Plaintiff's trademark infringement claims fail to allege facts that Defendants directly infringed Plaintiff's trademark. Instead, Plaintiff's trademark infringement claims rest upon theories of secondary liability. However, Plaintiff's trademark infringement claims fail for reasons similar to those stated above. This is partially because Plaintiff's arguments for trademark infringement parallel those for copyright infringement. See, e.g., (Plaintiff's Opposition at 18:19-20) ("Defendants are liable [for contributory trademark infringement] for the same reasons that they are secondarily liable for copyright infringement").

**1. Contributory Trademark Infringement**

In order to be liable for contributory trademark infringement, Defendants must have either "induce[d] a third party to infringe the plaintiff's mark or supplie[d] a product to a third party with

7

actual or constructive knowledge that the product is being used to infringe the [mark]." Lockheed Martin Corp. v. Network Solutions, Inc., 194 F.3d 980, 983 (9th Cir. 1999).

Again, Plaintiff rests upon the theory that economic influence over an infringer constitutes contributory infringement. "Indeed, defendants provide the ultimate inducement: payment for products and services." (Plaintiff's Opposition at 22-23.) Again, this Court notes that, under Plaintiff's logic, individual websurfers who patronize the Stolen Content Websites, while knowing that they are infringing others' marks, commit contributory trademark infringement because they, too, provide the Stolen Content Websites with "the ultimate inducement: payment for products and services." Such individuals, however, can hardly be deemed contributory trademark infringers. Liability for secondary trademark infringement is narrower than that under copyright law. Sony Corp. of America v. Universal City Studios, Inc., 464 U.S. 417, 439 n.19 (1984); Hard Rock Cafe Licensing Corp. v. Concession Servs., Inc., 955 F.2d 1143, 1150 (7th Cir. 1992).

Likewise, Plaintiff has not satisfied this Court that Defendants have "supplied a product" to the Stolen Content Websites with knowledge that the product is being used to infringe Plaintiff's mark. To determine whether a defendant "supplies a product," this Court must "consider the extent of control exercised by the defendant over the third party's *means* of infringement." Lockheed, 194 F.3d at 984 (emphasis added) (citing Hard Rock Cafe, 955 F.2d at 1148-49 (7th Cir. 1992)). As the court in Lockheed noted, "supplying a product" entails "[*d*]*irect control* and monitoring of the *instrumentality* used by a third party to infringe the plaintiff's mark[.]" Id. (emphasis added). Defendants merely operate payment systems for the Stolen Content Websites. In particular, Defendants process credit card transactions for the Stolen Content Websites. However, Defendants do not *directly control* the *instrumentalities used to infringe* Plaintiff's mark. Plaintiff avers that a series of contracts, rules, and regulations between Defendants and the Stolen Content Websites permit Defendants to control and monitor the instrumentalities used to infringe Plaintiff's mark.

> Defendants assert the right, which the frequently exercise, to suspend merchants from the Visa and MasterCard systems, or to exclude them altogether. For example, pursuant to [a contractual provision between Defendants and the Stolen Content Websites], Defendants have the right to terminate Stolen Content Websites 'immediately' if [they] 'violate any term,

8

condition, covenant or warranty of this Agreement.'

(FAC at 6:25-7:1.) At most, Plaintiff has pled that Defendants "monitor" the instrumentalities used to infringe Plaintiff's mark. Plaintiff has not pled that Defendants "directly control" the instrumentalities used to infringe Plaintiff's mark. For example, Plaintiff does not aver that Defendants actually control the hardware and/or software that the Stolen Content Websites use to infringe Plaintiff's mark.

**2. Vicarious Trademark Infringement**

In order to be liable for vicarious trademark infringement, Defendants and the Stolen Content Websites must "have an *apparent or actual* partnership, have authority to bind one another in transactions with third parties or exercise joint ownership or control over the infringing product." Hard Rock Cafe, 955 F.2d at 1150 (9th Cir. 1992) (emphasis added). In arguing that the Defendants and the Stolen Content Websites have an apparent or actual partnership, which provides them with authority to bind each other, Plaintiff advances an anfractuous argument.

> Defendants and the [Stolen Content] [W]ebsites have authority to bind each other in transactions with third parties. When defendants accept a charge, their agreement with the [Stolen Content] [W]ebsites binds them to process the charge and to cause the consumer's account to be debited. Defendants' acceptance of a charge binds merchants to provide promised products to third parties. It also requires merchants to adhere to the charge back system, pursuant to which merchants must refund fraudulent or otherwise improper charges. Accordingly, plaintiff has stated claims for contributory and vicarious trademark infringement.

(Plaintiff's Opposition at 19:17-24.)

Defendants' mere processing of credit card transactions does not bind the Stolen Content Websites to "provide promised products" to their patrons. It is the Stolen Content Websites themselves, who, by accepting patrons' funds, bind themselves to "provide promised products" to their patrons. Defendants merely provide financial services that assist in the exchange of consideration between the Stolen Content Websites and their patrons. Notably, the Stolen Content Websites would be equally bound to "provide promised products" to their patrons if Defendants never entered a transaction. That is, if, instead of accepting credit cards, the Stolen Content Websites only accepted cash via mail, the Stolen Content Websites would *still* be bound to "provide promised products" to its patrons. Plaintiff conflates the "ability" to bind with the "authority" to bind. The law requires the

9

latter. Defendants, who process credit card transactions, do not bind the Stolen Content Websites to their patrons any more than the United States Government, who prints legal tender, binds parties to a cash transaction. Thus, it cannot be said, based upon Plaintiff's attenuated argument, that Defendants and the Stolen Content Websites "have an *apparent or actual* partnership" wherein each has the "*authority* to bind one another in transactions with third parties[.]"

**C. Plaintiff's State Trademark Claims**

Plaintiff's Fourth Claim for Relief is brought under CAL. BUS. & PROF. CODE § 14335. Section 14335 applies to "[a]ny person who uses or unlawfully infringes upon a mark registered under this chapter or under Title 15 of the United States Code." CAL. BUS. & PROF. CODE § 14335(a). Plaintiff fails to allege that Defendants have ever used Plaintiff's marks. Moreover, since this Court has already found Plaintiff's trademark infringement claims are insufficient, § 14335 is simply inapplicable here.

**D. Plaintiff's Remaining Claims: Violation of Right of Publicity, Unfair Competition, and False and Misleading Advertising**

Plaintiff supports its remaining claims by reiterating its theme: Defendants' contracts with the Stolen Content Websites, Defendants' internal rules and regulations, and Defendants' economic influence over the Stolen Content Websites render Defendants complicit in the Stolen Content Websites' illicit activities. (Plaintiff's Opposition at 19:28-20:2) ("Defendants aid and abet Stolen Content Websites' theft of plaintiff's rights of publicity for the same reasons that they are liable for vicarious and contributory copyright infringement"); (Plaintiff's Opposition at 20:14-16) ("Defendants are liable for unfair competition under California Business and Professions Code section 17200, et seq. because they participate directly in the Stolen Content Websites' illegal activity and aid and abet that activity"); (Plaintiff's Opposition at 20:19-21) ("Defendants aid and abet the [Stolen Content Websites' illicit] activity by providing the financial services, and imposing the myriad of attendant rules and regulations, that allow the [Stolen Content] [W]ebsites to survive"). For the reasons stated above, and for the reasons set forth in its August 5, 2004 Order, this Court concludes that Plaintiff, at most, has pled that Defendants provided arms-length financial services to the Stolen Content Websites.

10

However, Plaintiff has failed to plead that Defendants actually aided and abetted the Stolen Content Websites in their illicit activities in any way.

## V. CONCLUSION

For the foregoing reasons, this Court GRANTS Defendants' Motion to Dismiss First Amended Complaint. Plaintiff's First Amended Complaint is dismissed in its entirety, with prejudice.

Dated: December 3, 2004

/s/James Ware
JAMES WARE
United States District Judge

04cv371mtd-fac

11

**THIS IS TO CERTIFY THAT COPIES OF THIS ORDER HAVE BEEN DELIVERED TO:**

Andrew P. Bridges abridges@winston.com
Jeffrey Neil Mausner jeffmausner@bmrlaw.com
Mark T. Jansen mtj@townsend.com
Michael H. Page mhp@kvn.com
Robert James Slaughter rjs@kvn.com
Stephen Davids Rothschild Rothschild@khpblaw.com

**Dated: December 3, 2004**              **Richard W. Wieking, Clerk**

                                              **By:/s/JWchambers**
                                                  **Ronald L. Davis**
                                                    **Courtroom Deputy**