IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| Perfect 10, Inc.,<br><br>    Plaintiff,<br> v.<br><br>Visa International Service Association, et al.,<br><br>    Defendant(s). | NO. C 04-00371 JW<br><br>**ORDER DENYING DEFENDANTS' MOTION FOR ATTORNEYS' FEES** |

## I. INTRODUCTION

Plaintiff Perfect 10 Inc., ("Plaintiff") brought this lawsuit against Defendants Visa International Services Association ("Visa"), First Data Corp., ("FDC"), Cardservices International, Inc., MasterCard International Incorporated ("MasterCard"), and Humboldt Bank (collectively "Defendants") claiming copyright and trademark infringement, violation of right of publicity, unfair competition, and false and misleading advertising. Defendants subsequently moved to dismiss Plaintiff's First Amended Complaint pursuant to FED. R. CIV. P. 12(b)(6). On December 3, 2004, the Court granted Defendants' Motion to Dismiss with prejudice. (See December 3, 2004, Order Granting Defendants' Motion to Dismiss.) On December 15 and 17, 2004, Defendants respectively moved for attorneys' fees, pursuant to FED. R. CIV. P. 54 (d)(2) and Civil Local Rules 54-5. Based on all the papers submitted to date, the Court DENIES Defendants' Motion for Attorneys' Fees.

## II. BACKGROUND

On January 28, 2004, Perfect 10 brought a complaint against Defendants alleging copyright and trademark infringements, violation of publicity rights, unfair competition, libel, and intentional interference with a prospective business advantage. Defendants subsequently filed a motion for dismissal under Rule 12(b)(6), which the Court heard on July 9, 2004. Plaintiff's main allegation was that Defendants were liable for contributory copyright infringement because Defendants had knowledge that some of their customers were operating allegedly infringing websites. Plaintiff based its allegation on the notifications it gave to Defendants concerning the websites' alleged infringing conduct. However, the Court found that although the element of knowledge was present, the claim lacked facts showing material contribution to the infringement. The Court found that the Defendants' financial services provided to the merchants were not essential to the operation of the Stolen Content Websites because the Stolen Content Websites could have used alternative methods of payment. Furthermore, Defendants' ability to process credit cards "does not directly assist the allegedly infringing websites in copying Plaintiff's works." (August 5, 2004 Order Granting Motion to Dismiss at 5:1 - 6:28.) With respect to the vicarious copyright infringement claim, the Court found that although some of the facts presented by the Plaintiff might have implied a financial benefit for Defendants, their ability to rescind their services did not imply control over the websites' alleged infringing actions. (August 5, 2004 Order Granting Defendants' Motion to Dismiss at 7-9.)

Plaintiff also made trademark infringement claims, but the Court did not find facts supporting direct infringement by Defendants. The Court dismissed but gave Plaintiff leave to amend because the applicable standards are narrower under the trademark infringement claims than those of copyright infringement claims. The Court found that there were not facts to conclude that Defendants induced the allegedly infringing websites to use Plaintiff's trademarks. All that Defendants supplied was "the ability to accept certain credit cards as payment, and this service did not have an apparent link to the alleged infringing activities." (August 5, 2004 Order Granting Defendants Motion to Dismiss at 9:2-21.) Thus, Plaintiff failed to make a prima facie case for contributory trademark infringement. With respect to the vicarious trademark infringement claims, the Court held that Plaintiff did not plead facts to indicate an "intimate relation between Defendants and allegedly infringing websites." (August 5, 2004 Order Granting Defendants' Motion to Dismiss at 10:1-2.) Instead, Plaintiff pled terms such as, "'control the infringing content' and 'direct financial benefit,'"

1 which count for copyright infringement but are not relevant for vicarious trademark infringement. (Id. at
2 10:4-6.) As a result, the Court dismissed the trademark infringement claims with leave to amend.

3       Plaintiff also alleged wrongful use of a registered mark under California Business & Profession
4 Code § 14335. The Court dismissed that claim for lack of facts supporting the use of Plaintiff's trademark
5 by Defendants. The Court also dismissed with leave to amend Plaintiff's claim of aiding and abetting the
6 violation of rights of publicity in various models. The Court based its decision on the fact that Defendants
7 did not participate in the alleged illegal activities, they only provided financial services to the merchants.
8 (August 5, 2004 Order Granting Defendant Motion to Dismiss at 10:21-22.) Plaintiff also asserted a claim
9 for unfair competition under 15 U.S.C. § 1125(a), California Business & Profession Code §§ 17200 *et*
10 *seq.,* and the common law. This Court dismissed those claims because Plaintiff did not allege any direct
11 wrongdoing, i.e., personal participation by Defendants. Based on the same reasons above, the Court
12 dismissed Plaintiff's claim for libel with leave to amend. The remaining claims were dismissed with
13 prejudice.

14       Following the submission of the amended complaint on September 7, 2004, the Court heard a
15 second motion to dismiss by Defendants on November 15, 2004. That hearing resulted in a dismissal with
16 prejudice of Plaintiff's remaining claims. (See December 3, 2004 Order Granting Defendants' Motion to
17 Dismiss.) Although Plaintiff added some facts to its original complaint, those facts were not sufficient to
18 support Plaintiff's claims under the legal standards. (Id. at 4:3-9.) Therefore, the Court dismissed
19 Plaintiff's First Amended Complaint with prejudice. On December 15 and 17, 2004, Defendants filed for
20 attorneys' fees.

21                      **III.  STANDARDS**

22 **A.**    **Attorney Fees Under the Copyright Act**

23       Under 17 U.S.C. § 505, district courts have judicial discretion to grant attorney fees to the
24 prevailing party in a copyright action. Fogerty v. Fantasy, Inc., 150 U.S. 517, 533 (1994). From the plain
25 language of § 505, courts cannot interpret that "successful plaintiffs are to be treated differently than
26 successful defendants." Fantasy, 150 U.S. at 522. According to the legislative history and the spirit of the
27 Copyright Act, plaintiffs and defendants are encouraged to litigate their meritorious claims to the same
28 degree. As a result, there is no foundation to carry the "dual standard" which treats plaintiffs and

1  defendants differently. Id., at 527-533. Thus, in Fantasy, the United States Supreme Court held that there
2  is not an exact formula for how courts should exercise their discretion to grant attorney fees. See Id. at
3  527-533. Courts must make their determinations based on equitable circumstances.

4  Ultimately, when courts grant attorney fees, they have to support their decisions by analyzing facts
5  such as "the degree of success obtained, frivolousness, motivation, objective unreasonableness of both the
6  legal and the factual arguments, the need to advance considerations of compensation and deterrence, and
7  the purpose of the Copyright Act itself." Jackson v. Axton, 25 F.3d. 884, 890 (9th Cir. 1994); Diamond
8  Star Building Corp., v. Freed, 30 F.3d. 503, 505 (4th Cir. 1994) (citing Lieb v. Topstone Indus., Inc., 788
9  F. 2d 151, 156 (3rd Cir. 1986)). These factors should be applied when they are consistent with the
10 purpose of the Copyright Act, which is not merely to discourage copyright infringement. Fantasy Inc., v.
11 Fogerty, 94 F.3d 553, 558 (9th Cir. 1996). "The policies served by the Copyright Act are more complex,
12 more measured, than simply maximizing the number of meritorious suits for copyright infringement." Id. at
13 559. The court made clear that these factors must be applied in an impartial approach and they should be
14 analyzed on a case-by-case basis with the main responsibility resting on the "shoulders of the district
15 judge." Lotus Development Corp. v. Borland International, Inc., 140 F.3d 70, 75 (1st Cir. 1998).
16 Moreover the factors are guidelines for courts to exercise their discretion as long they are faithful to the
17 purposes of the Copyright Act. Thus, courts cannot rely on these factors if they do not encompass those
18 purposes. Fogerty, 94, F.3d at 558.

19 **B.    Attorney Fees Under the Lanham Act**

20 Under 15 U.S.C. 1117(a), attorney fees are awarded to the prevailing party in a trademark action
21 only in "exceptional cases." The Ninth Circuit has defined "exceptional" to mean a case that is "groundless,
22 unreasonable, vexatious, or pursued in bath faith." Matrix Motor Co., v. Toyota Motor Sales U.S.A., Inc.,
23 No. 03-56359, No. 03-57199 2005 U.S. Dist. LEXIS 770, at 3 (9th Cir. 2004); Boney Inc.,v. Boney
24 Serv. Inc., 127 F.3d 821, 827 (9th Cir. 1997). Although bad faith of one of the parties can be one of the
25 elements to consider a case as an "exceptional" case, bad faith alone cannot determine attorney fees for a
26 prevailing party. "[O]ther exceptional circumstances may warrant a fee award." Boney, 127 F. 3d at 827;
27 (citing Fasa Corp., v. Playmates Toys, Inc., 108 F.3d 140, (7th Cir. 1997)).

28 **IV. DISCUSSION**

4

As a preliminary matter, the discussion below incorporates Defendants' demand for attorneys' fees under state trademark and other state claims because federal trademark and copyright claims dominate in this action.

**A.     Attorney Fees Under the Copyright Act**

The Court relies on the four factors articulated in <u>Jackson</u> to evaluate whether Defendants in this action are entitled to attorneys' fees. <u>Jackson</u>, 25 F.3d. at 890.

**1.     Plaintiff's Copyright Claims Were Not Objectively Unreasonable**.

The first factor is to determine whether Plaintiff's claims were objectively unreasonable. Defendants contend that the claims were unreasonable because the Plaintiff's original and amended complaints were dismissed. Defendants argue that even though dismissing a claim under FED. R. CIV. P. 12(b)(6) is generally disfavored, this Court dismissed Plaintiff's complaint twice. Defendants contend that Plaintiff's theory of liability was based on "Defendants economic influence upon the alleged infringers" instead of showing that Defendants actively contributed to the alleged infringing activities. Plaintiff's "theory of liability was contrary to settled copyright law and therefore objectively unreasonable." (Joint Reply Memo at 6:15-20.)

The Court is not persuaded by Defendants' arguments because the fact that Plaintiff's complaint was dismissed twice is not dispositive on the "objectively unreasonable" prong. On dismissing Plaintiff's complaints, the Court followed well established legal standards for motions pursuant to FED. R. CIV. P. 12(b)(6). Particularly, the Court analyzed Plaintiff's original complaint by following the legal standards articulated in <u>Conley v. Gibson</u>, 355 U.S. 41, 45-46 (1957) and <u>Usher v. City of Los Angeles</u>, 828 F.2d 556, 561 (9th Cir. 1987). Under these well established standards, this Court found potential merit to grant Plaintiff's leave to amend.

The Court directed the Plaintiff to plead facts that would demonstrate a "relationship between the financial services provided by the Defendants and the alleged infringing activity as opposed to the mere operation of the website business." (August 5, 2004 Order Granting Defendants' Motion to Dismiss at 7:2-3.) The Court's direction came from copyright law which requires that a plaintiff claiming contributory copyright infringement, shows that "defendant (1) had knowledge of the infringing activity; and (2) induced, or materially contributed to that infringing activity." (August 5, 2004 Order Granting Defendants' Motion to

5

1  Dismiss at 4:10-12.)  The Court found that Plaintiff satisfied the first element when it alleged that

2  Defendants knew about the infringement.  Defendants did not dispute this fact.  ( Id. at 4:14-15.)

3  However, Plaintiff did not allege facts showing that Defendants either induced or contributed to the alleged

4  infringement activity.  The Court ultimately rejected Plaintiff's argument that Defendants' financial services

5  could constitute a material contribution to the infringement. (Id. at 6:14-17.)

6       In addition, the Court ordered Plaintiff to amend the original complaint on the vicarious copyright

7  infringement claim.  Although the Court accepted Plaintiff's argument that Defendants' payment services

8  might indicate a financial benefit to Defendants, the Court instructed Plaintiff to establish facts regarding

9  Defendants' rights or abilities to control the alleged infringing conduct.  Thus by granting leave to amend, the

10 Court believed that it was possible for Plaintiff to allege sufficient facts to state claims from which relief may

11 be granted.  Ultimately, the facts pled by Plaintiff did not fulfill the standards required by law.  In light of the

12 potential claims, it could not be said that Plaintiff's claims were objectively unreasonable.

13      **2.**    **Plaintiff's Copyright Claims Were Not Frivolous.**

14      Frivolousness is another factor courts use to determine whether to grant attorney fees in a copyright

15 action.  Jackson v. Axton, 25 F.3d. at 890.  The United States Supreme Court has established that a

16 frivolous claim is one in which the factual contention is "clearly baseless," such as factual claims that are

17 "fantastic or delusional scenarios."  See Neitzke v. Williams, 490 U.S. 324, 325-328 (1989).  United States

18 Supreme Court has also held that though a claim is not successful, one cannot conclude that it is frivolous.

19 Hawaiian Engraving & MFG, Inc., v. Fujikami, No. 90-15997, 1991 U.S. Dist. LEXIS 26816 at *2 (9th

20 Cir. 1991).  Defendants contend that the amended complaint was frivolous because Plaintiff's amended

21 complaint lacked facts to support its claims, and that the amended complaint was not materially different

22 from its original complaint. (Joint Memo at 6:22-7:2, MasterCard's Motion to dismiss at 9:14-17.)

23      The Court is not persuaded by Defendants argument because this is a case where the alleged facts

24 presented a close question of law.  Undisputed facts pled by Plaintiff, such as, the existence of a valid

25 copyright's holder, that an infringement of those copyrights had occurred, and that Defendants had

26 knowledge of the infringing activity, and had obtained a financial benefit, presented valid questions as to the

27 merits of the claims.  However, the fact that a direct nexus with the infringement and control necessary to

28 prevent vicarious or contributory copyright infringement were not present as required by the current legal

**United States District Court**
For the Northern District of California

1  standards did not make Plaintiff's claims frivolous.

2  **3.     Plaintiff Presented Complex and Novel Issues.**

3  The Court considers it important to analyze whether the issues presented by Plaintiff were complex
4  or novel.  Although a successful defense may support attorneys' fees, the complexity of the case is also a
5  factor. Lotus Development Corp. v. Borland International, 140 F.3d 70, 75 (1st Cir. 1998).  Granting
6  attorneys' fees is disfavored when a plaintiff pursues an action in good faith in an unsettled area of law and
7  the parties have alike financial resources. Id. at 74 (citing McCulloch v. Albert E. Price, Inc., 823 F.2d
8  316, 322 (9th Cir. 1987)). The Court dismissed Plaintiff's First Amended Complaint based on the legal
9  standards established in Grokster Ltd., which contains the present test for copyright infringement.
10 (December 3, 2004 Order Granting Defendants' Motion to Dismiss at 6-7.) (citing Metro-Goldwyn-Mayer
11 Studios, Inc., v. Grokster Ltd., 380 F.3d 1154 (9th Cir. 2004).  The Grokster court held that although
12 copyright infringement standards are defined by binding legal precedents, courts must acknowledge the fast
13 track legal environment surrounding copyright issues as applied in cyberspace cases.
14 This case involves the usage of the Internet services.  It is evident that the innovation of technologies
15 or services on the Internet has produced an increase of participants in the Internet market.  These
16 participants have generated diverse transactions and thus have created a multitude of legal effects that may
17 not be covered by current legal standards.  Although Plaintiff alleged that Defendants' financial services to
18 merchants contributed directly to Plaintiff's copyright infringement, under the current standards, Defendant's
19 economic influence over copyright infringers did not constitute a direct relationship between Defendants'
20 activity and Stolen Content Website's Defendants' infringing acts.  According to Grokster, courts have to
21 minimize risks when they are either trying to restructure "liability theories," or when they face with the
22 dilemma of analyzing complex and novel issues that do not fit into settled legal standards.  See Grokster
23 Ltd., 380 F.3d at 1154-1156.  The issues raised by the Plaintiff were novel and complex in light of the
24 newly formed Internet market.  Recognizing this, the Court believes that the restructuring of the copyright
25 law and its liability proposition to address technological advances is a matter for the legislature.  Thus, it is
26 important to note that though the Court dismissed the Plaintiff's claims because they did not fit within the
27 current copyright infringement standards, the Court recognizes that those claims may have a place in future
28 legislation in this ever evolving Internet environment.

### 4. By Diligently Pursuing Their Claims and Defenses, Both Parties' Conduct Met the Objectives of the Copyright Act.

The Ninth Circuit has emphasized that "in considering motions for attorneys' fees under § 505 of the Copyright Act, the district court should 'seek to promote the Copyright Act's objectives.'" Magnuson v. Video Yesteryear, 85 F.3d. 1424, 1432 (9th Cir. 1996). In this case, although Plaintiff presented a set of facts that did not establish copyright infringement, Plaintiff was attempting to protect its copyrights which is one of the objectives of the Copyright Act. On the other hand, Defendants were also seeking protection from liability. As the Ninth Circuit explained in Grokster Ltd., cases where there are novel and complex legal issues in an evolving environment such as the Internet, both Defendants and Plaintiff in their respective pursuits ultimately further the purposes of the Act. Novel and complex issues such as the ones presented by Plaintiff, have to be presented before courts to test existing laws against technological innovation and the economic prosperity under the fundamental framework of the Copyright Act. To grant attorneys' fees here would constitute a kind of punishment to the party who is presenting new issues in an unsettled area of law.

### 5. There Is No Need For Deterrence In This Instance.

Defendants assert that because Plaintiff's claims were without merit and dismissed by this Court, Plaintiff and others should be prevented from filing similar claims in the future. In Lotus Development Corp., the court held that there is no need for deterrence when neither party has any improper motivation in litigating a case, both parties have an important economic interest, and the matter of the litigation has some importance for Copyright law. Development Corp., 140 F.3d at 74. Thus, absent bad faith, the Court cannot punish Plaintiff and other copyright holders in the future for trying to protect their copyrights. In looking of the magnitude of the allegations and potential liabilities, both parties had important economic interest in the case and thus, rightfully litigated their claims.

### B. Attorney Fees Under the Lanham Act

"Exceptional circumstances can be found when the non-prevailing party's case is 'groundless, unreasonable, vexatious, or pursued in bad faith.'" Gracie USA v. Rorion Gracie, 217 F.3d 1060, 1070 (9th Cir. 2000) (citing Boney Serv. Inc., 127 F. 3d at 827). Although Plaintiff was not successful in its trademark infringement claims, the Court does not find that Plaintiff's claims were "groundless, unreasonable, vexatious, or pursued in bad faith." Granted that this case involved issues outside of the

limits of any previous copyrights and trademark decisions, Plaintiff's claims may be construe as an attempt to extend existing laws because a close question of law was presented. As the Court explained in the Copyright Act claims, complex and novel legal issues related to the Internet cannot be considered as a groundless or unreasonable only because they do not meet the current legal standards. It is reasonable for a valid trademark holder to attempt to protect its intellectual property rights, especially when the issues arose out of an unsettled area of law--the Internet.

## V.  CONCLUSION

For the foregoing reasons, this Court DENIES Defendants' Motion for Attorneys' Fees.

Dated: August 12, 2005

/s/ James Ware
JAMES WARE
United States District Judge

**THIS IS TO CERTIFY THAT COPIES OF THIS ORDER HAVE BEEN DELIVERED TO:**

Andrew P. Bridges abridges@winston.com
Jeffrey Neil Mausner jeffmausner@bmrlaw.com
Mark T. Jansen mtj@townsend.com
Michael H. Page mhp@kvn.com
Robert James Slaughter rjs@kvn.com
Stephen Davids Rothschild Rothschild@khpblaw.com

**Dated: August 12, 2005**                    **Richard W. Wieking, Clerk**


**By:  /s/ JW Chambers**
       **Ronald L. Davis**
       **Courtroom Deputy**